[No. 9929.   Department One. — June 7, 1888.]

## ALBERT F. WHEATON, RESPONDENT, v. NORTH BRITISH AND MERCANTILE INSURANCE COMPANY, APPELLANT.

| | |
|---|---|
| 76 | 415 |
| 83 | 257 |
| 76 | 415 |
| 86 | 263 |
| 76 | 415 |
| 88 | 505 |
| 76 | 415 |
| 98 | 512 |
| 76 | 415 |
| 126 | 502 |
| 76 | 415 |
| 148 | 476 |

INSURANCE — APPLICATION MADE OUT BY AGENT OF INSURER — MISSTATEMENTS — WARRANTIES. — Insurance companies who do business through the medium of agents are responsible for their acts within the general scope of the business intrusted to their care, and no limitations of their authority will be binding on parties with whom they deal, which are not brought to their notice. Hence, when the agent undertakes to prepare the application for the insured, he will be regarded in doing so as the agent of the insurance company, and not of the insured, and any misstatements therein contained, of which the insured is ignorant, will not be fatal to the policy, although by the terms of the policy the statements contained in the application are made warranties.

ID. — STATEMENTS AS TO VALUATION — FRAUDULENT INTENT — QUESTION OF FACT. — A provision in the policy that the application shall be considered a warranty, and if the property insured is over-valued in it the policy shall be void, applies only where the statements as to value are intentionally false; and the question of fraud is one of fact.

ID. — DISCREPANCY BETWEEN ACTUAL AND STATED VALUATION. — The fact of a considerable discrepancy between the actual value of the property insured and the value as stated in the application, although unexplained by other evidence, is not conclusive that the application was intentionally fraudulent.

ID. — STATEMENTS WHEN NOT WARRANTIES. — Even when the statements in the application are declared to be warranties, they will not be regarded as such, if qualified by other stipulations which afford a fair inference that the parties themselves did not so intend them.

ID. — VALUATION IN APPLICATION — WILLFUL MISREPRESENTATIONS — CONSTRUCTION OF POLICY. — A statement made in the application as to the value of the property will not be construed as a warranty, although by a general provision all statements therein are declared to be warranties, when the other stipulations of the policy show that it was the intention of the parties that only willful misrepresentations should avoid the policy.

ID. — WAIVER OF CONDITIONS — INSURER MAY WAIVE FORFEITURE — INSTRUCTION ABSTRACTLY CORRECT NOT DEEMED MISLEADING. — The policy in question contained a provision to the effect that no condition thereof could be waived by an agent, except by a written indorsement on the policy. The court instructed the jury that under certain circumstances the insurance company might waive a forfeiture by parol, or by its acts or conduct. The record contained no specification of insufficiency of evidence to sustain the finding that a forfeiture was waived, nor did the defendant ask for any instruction indicating what facts should appear to

make the instruction appropriate. *Held*, that the instruction was correct as an abstract legal proposition, and would not be deemed to have misled the jury.

ID. — STIPULATIONS TO BE PERFORMED AFTER LOSS — AGENT MAY WAIVE WITHOUT WRITTEN INDORSEMENT. — A provision in the policy that no waiver of a condition can be made by an agent except by indorsement does not refer to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing preliminary proof.

ID. — WAIVER QUESTION OF FACT — INSTRUCTION — INFERENCE OF FACT. — The question whether or not the delay of the insured in making proof of loss had been waived is one of fact for the jury. But an instruction that the jury should infer a waiver, if certain acts of the agent were proved to their satisfaction, is without prejudice, when such acts conclusively establish a waiver, and the evidence thereof is uncontroverted.

ID. — ESTOPPEL TO CLAIM FORFEITURE — KNOWLEDGE OF OVER-VALUATION — DEMAND AND RECEIPT OF PROOF OF LOSS. — The fact that the general agent of the insurer, with knowledge that the property insured had been over-valued, but without knowledge that such over-valuation was intentional, asked for and received proofs of loss from the insured, will not estop the insurer from claiming a forfeiture of the policy on account of the fraudulent representations of the insured as to the value of the property.

ID. — FINDINGS — TROUBLE AND EXPENSE OF MAKING PROOF — ABANDONMENT OF CLAIM. — The mere fact that the general agent of the insurance company asked the insured to furnish preliminary proofs of loss, which by the terms of the policy he was required to furnish, will not authorize a finding that by reason thereof the insured was put to the trouble and expense of making such proof, or that had such request not been made, he would have abandoned all claim against the company.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought on a policy of fire insurance to recover for a loss by fire. The insured property consisted of certain furniture and fixtures in a bath-house and saloon, and were by the policy insured respectively for six hundred dollars, three hundred dollars, and two hundred dollars. The application for the insurance was made out by the local agent for the company, and stated that the property was respectively valued at nine hundred dollars, five hundred dollars, and four hundred dollars. The actual value of the property at the time of

the insurance was about thirteen hundred dollars.  The evidence as to whether the plaintiff knew of the over-valuation in the application was conflicting.  He testified that he signed the application without reading it, while the agent testified to the contrary.  The action was tried before a jury, who returned a general verdict for the plaintiff.  Judgment was rendered accordingly, from which, and from an order refusing a new trial, the defendant appealed.  The further facts are stated in the opinion of the court.

*T. C. Van Ness,* for Appellant.

The truth of all statements made in the application were material, and if in any respect the statements were false, there was a breach of warranty.  (Civ. Code, secs. 2607–2612;  May on Insurance, secs. 156, 158, 185.)  The plaintiff was bound by the statements in the application whether he read it or not.  (*New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519;  *Hawkins* v. *Hawkins,* 50 Cal. 558;  *Susquehanna Mut. Fire Ins. Co.* v. *Swank,* 12 Ins. Law J. 627;  *Maine etc. Ins. Co.* v. *Hodgkins,* 66 Me. 109;  *New Albany R. R. Co.* v. *Fields,* 10 Ind. 187;  *Taylor* v. *Atchinson,* 54 Ill. 196;  5 Am. Rep. 118;  *Elliott* v. *Lewis,* 14 Ill. 213;  *McCormak* v. *Molburg,* 43 Iowa, 561;  *Glenn* v. *Statler,* 42 Iowa, 110;  *Hunter* v. *Miller,* 6 B. Mon. 612;  *Rogers* v. *Race,* 29 Ind. 577;  *Foreman* v. *Great Western R'y Co.,* 38 L. T., N. S., 85;  *Commonwealth Fire Ins. Co.* v. *Huntzinger,* 10 Ins. Law J. 618.)  The plaintiff, by accepting the policy, ratified the application. (*Richardson* v. *Maine Ins. Co.,* 46 Me. 394;  74 Am. Dec. 459.)  The instruction that if the agent of the company, after knowledge of the over-valuation, called upon the plaintiff to furnish preliminary proofs, the forfeiture by reason of the over-valuation was waived, is erroneous.  (*Gladding* v. *Insurance Ass'n,* 66 Cal. 6;  *McCormick* v. *Springfield F. & M. Ins. Co.,* 66 Cal. 361;  *Enos* v. *Sun Ins. Co.,* 8 Pac. Rep. 377;  *New York L. Ins. Co.* v. *Fletcher,*

117 U. S. 519; *Walsh* v. *Hartford F. Ins. Co.*, 73 N. Y. 5; *Bermingham* v. *Farmers' Joint Stock Ins. Co.*, 67 Barb. 593; *Waynesboro Mut. Fire Ins. Co.* v. *Canover*, 11 Ins. Law J. 413.)

*McAllister & Bergin*, for Respondent.

An agent authorized to take applications for insurance should be deemed to be acting within the scope of his authority when he fills up a blank application; and if by his fault or negligence it contains a material mis-statement not authorized by the instruction of the party who signs it, the wrong should be imputed to the company, and not to the insured. (*Insurance Co.* v. *Wilkinson*, 13 Wall. 232; *Insurance Co.* v. *Mahone*, 21 Wall. 155; *Bennett* v. *Agricultural Ins. Co.*, 106 N. Y. 248; *Rawley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Baker* v. *Home Life Ins. Co.*, 64 N. Y. 648; *Flynn* v. *Equitable Life Ins. Co.*, 78 N. Y. 577; 34 Am. Rep. 561; *Grattan* v. *Metropolitan Life Ins. Co.*, 80 N. Y. 294; 36 Am. Rep. 617; *Travellers Ins. Co.* v. *Edwards*, 122 U. S. 469; May on Insurance, secs. 143, 144; *Kruger* v. *Western F. & M. Co.*, 72 Cal. 91; *Menk* v. *Home Mut. Ins. Co.*, 76 Cal. 50; 2 Woods on Insurance, sec. 409; *Gates* v. *Pennsylvania F. Ins. Co.*, 10 Hun, 491; *Partridge* v. *Commercial Fire Ins. Co.*, 17 Hun, 96.) The company waived the forfeiture when after knowledge thereof it caused the plaintiff to go to the trouble and expense of preparing proof of loss. (*Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 413; *Webster* v. *Phœnix Ins. Co.*, 36 Wis. 68; 17 Am. Rep. 479; *Gans* v. *St. Paul F. & M. Ins. Co.*, 43 Wis. 110; 28 Am. Rep. 535; *Pennsylvania Fire Ins. Co.* v. *Kettle*, 39 Mich. 53; 2 Woods on Insurance, sec. 525.)

McKINSTRY, J.—In *New York Life Insurance Company* v. *Fletcher*, 117 U. S. 519, the insured signed an application for a life policy, containing declarations as to his life and past and present health, warranting the truth of

such declarations; the application contained the stipulation that inasmuch as only the officers at the home office had authority to determine whether or not a policy should issue on any application, and they acted only on the written statements and representations referred to, no statements or representations made, or information given to the persons soliciting or taking the application for the policy, should be binding on the company, or in any manner affect its rights, unless they were reduced to writing and presented to the home office in the application. There it appeared the agent of the company asked questions of the applicant, and the latter made answers which, if correctly written down, "would probably have caused the company to decline the risk." The agent, without the knowledge of the applicant, wrote down false answers concealing the truth, which were signed by the applicant without reading, and by the agent transmitted to the company, and the company thereupon assumed the risk. It was said that it was the duty of the applicant to read the application before signing it, and as the application on its face showed that the power of the agent was limited, and as it was conditioned in the policy that the answers were part of it, and that no statement to the agent not thus transmitted should be binding on the principal, the policy was void.

It seems to have been held that the insured must be presumed to have had notice of the limitations upon the powers of the agent contained in the application which he would have received if he had read the application. The case is distinguished from *Insurance Company* v. *Wilkinson*, 13 Wall. 222, and *Insurance Company* v. *Mahone*, 21 Wall. 152, the court saying: "In neither of these cases was there any limitation upon the power of the agent brought to the notice of the assured."

In the case at bar there was evidence that the plaintiff did not read the application prepared by the agent, and had no knowledge of the statement therein as to the

values of the property insured. The application does not contain any express limitation upon or define expressly the authority of the agent.

The present case is within the principles laid down in Insurance Company v. Wilkinson, 13 Wall. 222; and Insurance Company v. Mahone, 21 Wall. 152.

In Insurance Company v. Wilkinson it was held that insurance companies who do business at a distance from their principal place of business are responsible for the acts of their agent within the general scope of the business intrusted to his care, and no limitations of his authority will be binding on parties with whom he deals which are not brought to their knowledge; hence when the agent undertakes to prepare the application for the insured, he will be regarded in doing so as the agent of the insurance company, and not of the insured. In Insurance Company v. Mahone a like ruling was made; and it was held that an answer to a question put to an applicant, as written down by the agent of the company when he takes the application, signed by the applicant, may be proved by the testimony of persons who were present not to have been the answer given by the applicant.

The law bearing upon the question is very clearly laid down by May in his work on insurance: "Insurers may and often do find themselves in such a position that they cannot avail themselves either of breach of warranty or of misrepresentation or concealment. And when in this position, they are said to be estopped from availing themselves, or to have waived the right to avail themselves, of such a defense. And the rule here is, with reference to the negotiations had at the time of taking out the policy, that when the application is reduced to writing by the insurer or his agent upon the oral statement of the applicant, whether the application is or is not made tantamount to a warranty, by being made part of the contract, the insurer being under a strong moral obligation to secure to the applicant the protection for which he

pays, if a controversy arises upon the truthfulness of the application, and statements alleged by the insurer to be essential are omitted, and others falsely made, and he seeks to avoid the contract on that ground, parol evidence is admissible to show that at the time the negotiations were pending the facts alleged to have been omitted or falsely stated were in fact truly stated." (Page 605, section 497.)

Of course it was for the jury who tried this cause to decide whether the plaintiff knew of the contents of the application before he signed it, or whether he gave a different valuation to that therein inserted, and had reason to believe that his statement as to value had been written down as he gave it..

In the answer as written down by the agent of defendant herein, the properties insured are stated to be severally worth nine hundred dollars, five hundred dollars, and four hundred dollars,—eighteen hundred dollars in the aggregate.

There was testimony that prior to the preparation of the written application the plaintiff stated to the agent of the defendant that the value of the whole property insured was about fifteen hundred dollars. The amount of insurance was eleven hundred dollars,—six hundred dollars, three hundred dollars, and two hundred dollars.

At the trial it was stipulated that the value of the insured property at the time of the insurance, and also at the time of the fire, was the amount stated in the plaintiff's preliminary proof of loss,—$1,302.18.

The policy contains the clause: "Special reference being made to assured's application and survey No. 261,707, which is his warranty, and a part hereof." It also contains the stipulation and condition: "If any false representation is made by the assured of the condition, situation, or occupancy of the property, or any over-valuation, or *any misrepresentation* whatever, either

in a written application or otherwise, . . . . this policy shall become void."

In *Helbing* v. *Svea Insurance Company*, 54 Cal. 156, 35 Am. Rep. 72, it was held that a provision in a policy of insurance that the application shall be considered a warranty, and if the property insured is over-valued in it the policy shall be void, applies only where the statements as to value are intentionally false; that the question of fraud is one of fact; that, although, where the discrepancy between the statement in the application and the actual value of the property is so great as to convey the conviction of fraud to the reasonable mind, the jury may and ought to find fraud, yet, where the discrepancy is very considerable, the jury may find the application not to have been fraudulent, even in the absence of explanatory evidence.

There have been decisions in other states to the contrary of the view of this court in *Helbing* v. *Svea Insurance Company*, the question being the construction of a condition that the policy shall be void in case of over-valuation.  But, as said by Mr. Wood: " There can be no doubt that, in conformity with the ordinary rules of construction applied to insurance contracts, and the ordinary principles of justice and fair dealing upon which they are supposed to be predicated, a policy cannot be held to be void for breach of such a condition, unless the over-valuation is intentional and fraudulent, and not a fair expression of the honest judgment of the insurer, and the fact that the property has been considerably over-valued does not, of itself, establish such fraud on the part of the assured as avoids the policy, . . . . and the burden is on the insurer to establish both the over-valuation and the fraud."   (1 Wood on Insurance, sec. 325; see cases pro and con cited in notes to the section.)   The estimate of value is an opinion.   The answer to the question asked as to value is to be treated as if the question read: " What, in your honest judgment and

opinion, is the value of the property?" The same learned writer says: "A doctrine that held the insurer up to a strictly exact valuation would be extremely unjust, and would result in vitiating one half of the policies issued, for under the rule the difference of one cent is as disastrous as a difference of a large amount." (Id.)

Moreover, the language of the provision in the policy here sued on, that if any false representation is made by the assured, etc., the policy shall become void, when read as a whole, very clearly shows that a willful misrepresentation as to the value of the property, or one made with such gross and reckless carelessness as in law would be treated as willful, was in the contemplation of the parties. If so, the previous clause does not make the valuation a warranty. Even when the statements in the application are declared to be warranties, they will not be regarded as such if qualified by other stipulations, which afford a fair inference that the parties themselves did not so intend them. The provision that an intentional overvaluation of the property should avoid the policy was utterly unnecessary, and must be disregarded, if it was intended the applicant should warrant the exact correctness of his valuation. (May on Insurance, sec. 161.)

The case at bar does not, however, require a full consideration of the doctrines of warranty, as applied to insurance contracts, which, whatever their form, are treated as conditions precedent.

There was evidence that the eighteen-hundred-dollar valuation was no part of the contract between these parties. If it be said that the statement of plaintiff— "about fifteen hundred dollars"— was not true, that statement was no part of the contract, as merged in the writings,—therefore no warranty. A representation is clearly distinguishable from a warranty; the former being a part of the proceedings which propose a contract, and the latter a part of the contract when completed. A misrepresentation renders the contract void on the ground

of fraud; a non-compliance with a warranty is an express breach of the contract. (Angell on Fire and Life Insurance, 146, 147.) A fraudulent misrepresentation will avoid the contract whether it is expressly so stipulated or not. Representations are *dehors* the contract. If the policy was issued to the plaintiff without any answer in the application to the inquiry as to value, there could be no breach of warranty as to value. (*Carson* v. *Jersey City Ins. Co.*, 49 N. J. L. 300; 39 Am. Rep. 584.)

That an over-estimate of about two hundred dollars was not necessarily intentional or fraudulent is, as appears from what has been said, very clear.

The charge of the court to the effect that the overvaluation did not deprive the plaintiff of his right to recover unless it was intentionally or knowingly made, or the application was so negligently made as to induce an over-valuation, was, under the circumstances, not erroneous. The charge, in so far as it seems to make the plaintiff's right to recover depend upon affirmative fraudulent acts and conduct of the defendant's agent, which induced the plaintiff to sign the application, was at least as favorable to the defendant as it was entitled to ask.

The court below instructed the jury: "When there has been a breach by the insured of the warranty contained in an application for insurance, the insurance company may or may not take advantage of such breach, and claim a forfeiture; but it may also waive a forfeiture, and this it may do by any act on its part which, after its full knowledge of such forfeiture, subjects the insured party to trouble and expense as to his claim for insurance on said forfeited policy."

The sixth subdivision of the policy reads: "The use of general terms, or anything less than a distinct specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein." And by the

twelfth subdivision: "It is further understood and made part of this contract that the agent of this company has no authority to waive, modify, or strike from this policy any of its printed conditions, . . . . nor, in case this policy shall become void by reason of a violation of any of the conditions thereof, has the agent power to revive the same," etc.

The witness Heacock testified that the plaintiff did, in fact, read the application and questions attached before signing them. If the jury believed such testimony, it was evidence tending to show that the plaintiff had knowledge of the answer valuing the insured property at eighteen hundred dollars; that he approved of the statement, and by ratification recognized Heacock as his agent in preparing the application. If he did, with knowledge of the contents of the application, sign it, he was bound by the statements contained in it. And the difference of five hundred dollars was *some* evidence of an intentional over-valuation. Whether he did or did not know its contents was a question of fact for the jury. Upon the hypothesis that he did know, the charge last quoted was material, and may have controlled the action of the jury in finding their verdict. It becomes important, therefore, to inquire whether the charge correctly declares the law.

It is contended by respondent that the limitation of the agent's power contained in subdivisions of the policy six and twelve, above quoted, do not apply to a waiver of forfeiture based on an over-valuation of the property insured. But if the statement that the property was worth eighteen hundred dollars was the statement of the plaintiff, its correctness as the fair judgment of plaintiff was a condition entering into and forming a part of the contract of insurance; and it is to such conditions—and not to mere omissions in the mode or manner provided for proving the loss after a fire—that a clause, "nothing less than a distinct specific agreement,

clearly expressed and indorsed on this policy, shall oper-
ate as a waiver of any printed or written condition or
restriction therein," refers. (*Blake* v. *Exchange M. Ins.
Co.*, 12 Gray, 265; *Franklin Ins. Co.* v. *Chicago Ice Co.*, 36
Md. 102; 11 Am. Rep. 469; *McCormick* v. *Springfield Co.*,
66 Cal. 366.)

It is said in Wood on Fire Insurance (sec. 325) that
when the insurer, knowing the facts, does that which
is inconsistent with its intention to insist upon a strict
compliance with the conditions of the contract, it is
treated as having waived their performance, and the
assured may recover without proving performance, "and
that, too, even though the policy provides that none of
its conditions shall be waived except by written agree-
ment."

But the cases referred to are those in which the agent,
authorized to do so, has waived the condition. There is
a class of cases in which it has been held that where the
policy contains a provision that if the premium shall
not be paid on a day certain, or shall not be paid when
the policy is delivered, the policy shall be void, and that
no agent is authorized to waive any condition without
authority in writing; still, as the company may at any
time authorize its agents to make agreements extending
the time for payment of premiums, or waiving forfeiture
for non-payment, it is not bound to act on the declara-
tion in its policy that they have no such authority;
that whether it has exercised its option to empower its
agents to give credit or extend time is provable by evi-
dence oral or written; and, as showing that the company
has given its agent such power, evidence is admissible
as to its practice in allowing him to extend the time.
(*Carson* v. *Ins. Co.*, *supra; Ins. Co.* v. *Norton*, 96 U. S.
243; *Phœnix Ins. Co.* v. *Doster*, 106 U. S. 30.) But where
the policy contained the provision that no agent had
power to waive any condition without authority from
the secretary in writing, and the agent delivered a pol-

icy without payment of the premium, and there was no evidence, oral or written, that he had power to do so, and the premium was not paid, it was held the holder of the policy could not recover. (*Pottsville Mutual* v. *Minnequa Springs Co.*, 100 Pa. St. 137.)   The class of cases referred to is very different from that in which the policy provides that there can be no waiver except in writing indorsed on the policy.   In the last case, the mode enters into and is a part of the power; the insured has full notice when he enters into the contract that a condition cannot be waived by an agent to whom the provision as to written indorsement relates, except in the manner in the contract provided.

It is insisted by appellant that the instruction last quoted must have misled the jury.   The statement on motion for new trial contains no specification of insufficiency of evidence to sustain a finding that a forfeiture was waived,— a finding which may have been included in the general verdict; and the defendant did not ask for an instruction indicating what facts should appear to make appropriate the instruction given.   Under the circumstances, we think the order refusing a new trial should not be reversed, because of the possible ill effect of a charge abstractly correct.   We say abstractly correct, for it cannot be doubted that an *insurer* may waive a condition orally, or by his acts or conduct.

It may be remarked that this court has not held (in a case in which the question was necessarily decided) that a provision in a policy that there shall be no waiver of a condition except by writing indorsed on the policy applies to a waiver by a "general agent" of a foreign corporation,— so named, and registered as such under the statute,— with presumed original powers co-extensive with those of his principal, where *no restriction* upon his powers is inserted in the policy. (See *Steen* v. *Niagara Company*, 89 N. Y. 315; 42 Am. Rep. 297.)

In *McCormick* v. *Springfield Company, supra,* it was

held that the facts were insufficient to prove a waiver or estoppel. If what is there said seems to imply that a general agent (restrictions upon whose general powers are not inserted in the policy or brought home to the insured) can never waive a forfeiture except by writing, etc., the statement is mere *dictum.* In *Gladding* v. *California etc. Company,* 66 Cal. 6, the scope or extent of the agent's authority did not appear. Nor do the exigencies of the present case demand a determination of the question suggested.

The court below charged the jury that the delay in the presentation by plaintiff to defendant of proofs of loss was waived, if certain acts of the general agent of the defendant were proved to their satisfaction. The clause in the policy as to no waiver except by indorsement refers to those provisions of the policy which enter into and form a part of the contract of insurance, and which are properly designated as *conditions;* it has no reference to those stipulations which are to be performed after a loss has occurred,—such as giving notice and furnishing preliminary proofs. (*Franklin etc. Company* v. *Chicago Ice Company; Blake* v. *Exchange Company, supra.*) There can be no doubt that the agent may waive a delay in presenting preliminary proofs. Whether in this case the agent did waive it was, however, a question of fact for the jury, and it is not a practice to be commended for a court to instruct the jury that they must infer a fact from other facts. (Const., art. 6, sec. 19.) Yet, as the jury would not have been justified in finding upon the facts recited that the delay was not waived, the instruction did not injure the defendant. It would appear that the facts stated in the instruction were not controverted.

The court below instructed the jury: "If Mr. Grant was at the time and after the fire in question the agent of the defendant, and as such had knowledge of the fire in question, and also of the valuation of eighteen

hundred dollars of the insured property in question in plaintiff's application for insurance, and sent Mr. Sexton or Mr. Dimond to Santa Cruz to examine after the fire, as to the value of the insured property in question, and was informed by the report of said Sexton or Dimond that said insured property was over-valued in said application, and was of much less value than eighteen hundred dollars, and believed said report; and if Mr. Grant, after all this, requested the plaintiff to make out preliminary proofs, and present vouchers in support of his claim on the policy of insurance in question, and thereupon the plaintiff was put to the trouble and expense of making preliminary proofs as to his said claim, by said action of Mr. Grant,—if you find such action established by the evidence, you will be authorized to find that the defendants waived any forfeiture resulting from any over-valuation of the insured property in plaintiff's application for said insurance."

It has been held that an adjustment of a claim by an insurer after a loss, and an agreement to pay a certain sum in liquidation, is a new contract, and that in an action on such new contract the insurer cannot, in the absence of *fraud*, set up a breach of warranty or condition of the policy, even if ignorant of the breach until after the agreement to pay.   (2 Wood on Insurance, sec. 450.)   We understand this to mean fraud on the part of the insured which induces the insurer to enter into the settlement.   But here there was no such adjustment or agreement, and the action is on the policy.

The waiver spoken of in the instruction is another term for estoppel.   There can be no estoppel where the facts are not known, as no one can be presumed to have waived that the existence of which he has not known. (*Finley* v. *Lycoming Co.*, 30 Pa. St. 311; 72 Am. Dec. 705; *Forbes* v. *Agawam Co.*, 9 Cush. 470; *Allen* v. *Vermont Co.*, 12 Vt. 366; *Biddle Boggs* v. *Merced Co.*, 14 Cal. 279.)   And the facts proved must be such that an estop-

pel is clearly deducible from them.  Estoppels are not favored.  (*Franklin Co.* v. *Merida*, 35 Cal. 558.)

The representation, whether by word or act, to justify a prudent man in acting upon it, must be plain, not doubtful or matter of questionable inference.  *Certainty* is essential to all estoppels.  (Bigelow on Estoppel, 559.)

It is true, the jury were told that if the recited acts were proved, they were "authorized," not required, to find the estoppel.  But, as we have seen, the difference between the statement of value in the application and the actual value, even if very great, is at most but evidence of an intentional over-valuation, and to constitute a breach of the condition, the over-valuation must be intentional.  It would appear that a "considerable" over-valuation does not of itself establish fraud *prima facie.*  (Wood on Insurance, sec. 325).  Even if it be conceded that had the jury inferred fraud from an over-valuation of five hundred dollars, the verdict would not have been set aside, it is certain that if they had found no fraud, notwithstanding an over-valuation of five hundred dollars unexplained, we would not annul the verdict as being against the evidence.  From the circumstances assumed in the instruction, the agent of the defendant was not bound to know as a fact that there had been a breach of the condition.  He may have believed no fraud, although he accepted as true the statements contained in the reports of his subordinates; even if those reports aroused his suspicions, he may, as a prudent and reasonable man, have reserved the matter for further investigation.  He was not estopped, as having knowledge of a fact, because another fact was brought to his attention which might have excited his suspicion, or even if the fact of which he had notice ought to have put him upon inquiry.  The appropriate time for investigation as to breaches of warranty or falsity of representation is when application is made for payment of a claim, and presentation of the proofs.  (2 Wood on Insurance, sec.

450.) It would be unjust to the agent of defendant to assume that he anticipated the possible result of such investigation, and determined there had been an intentional over-valuation prior to the investigation. And it would place an insurer in the power of a fraudulent applicant if, having some reason to suspect a fraudulent representation, although not in possession of evidence on which he could prudently rely to prove it, he should be held to be estopped from establishing the fact that the representation was intentionally false, because he had received or asked for proofs of the loss. Even if the jury would have been authorized to infer that the agent knew of the intent to over-value, if he knew of the over-valuation, they were not so instructed. They were told they might find an estoppel from the agent's knowledge of an over-valuation, and his request for preliminary proofs; and must have understood that they could find the estoppel by direct inference from his knowledge of the over-valuation, whether he had or had not knowledge that it was intentional. This they were not authorized to do. The question is not whether there was any evidence tending to prove knowledge by the agent of a fraudulent over-valuation, but whether the jury could properly be instructed that they could directly infer, from a fact which tended to prove another fact, that which they were authorized to infer only from the fact which the probative fact tended to prove. As an intentional over-valuation would alone avoid the policy, it would seem clear that knowledge by the defendant of such intentional over-valuation was one of the facts necessary to be proved to make out an estoppel. If so, the jury were not authorized to find estoppel upon mere knowledge of the over-valuation and request by defendant for the production of proofs of loss.

In cases like the present it must appear that the insured was misled to his prejudice; and where no act has been done, or left undone by the insured, in reliance on the act or non-action of the insurer, there can be no

estoppel. (May on Insurance, sec. 507; *McCormick* v. *Springfield Co., supra.*) The acts or declarations must have influenced the conduct of the other party to his injury. (*Boggs* v. *Merced Company, supra.*) An estoppel can never arise by implication alone, except by some conduct which induces action in reliance upon it to an extent which renders it fraud to recede from what the party has been induced to expect. (*Security Co.* v. *Fay,* 22 Mich. 467; 7 Am. Rep. 670.) An equitable estoppel is only called into existence for the prevention of wrong and redress of injury. There must be some element of wrong in the action of the party creating it. He must know, or have sufficient reason to believe, that another party will place himself in a different position, or subject himself to additional injury in consequence of the action or representation.

The jury were not authorized to find that the plaintiff was "put to the trouble and expense of making preliminary proofs as to his claim," by the agent's request that he make such proofs. The plaintiff could not have been induced to go to such trouble and expense by the mere waiver of time within which the proofs were to be made, or of the stipulated mode of making them. It was equally his duty to make them whether the time and mode were waived or not. His action is to be referred to the contract; his motive to the necessity of making the proofs as a preliminary to securing the insurance. After he was requested to make the proofs he had agreed to make he made them, but the statement that he was induced to make them by the request is only a *post hoc ergo propter hoc.* The waiver was for his benefit, and simply left him with a right to make proofs after the time or in a different manner from that prescribed. Such must have been understood by both parties to be the purpose of the waiver as to the production of the preliminary proofs, or the request for them.

Nor were the jury authorized to find that the plaintiff

would have abandoned all claim against the defendant had he been informed that the latter would resist the claim in reliance upon a breach of the condition as to over-valuation. Whether the defendant waived any forfeiture by reason of a breach of that condition or not, it was the duty of the plaintiff to make proof of his loss, and no greater effect should be referred to a request for such proof than such as would naturally, or in the usual course of things, be caused by it. His request cannot be enlarged beyond its natural import and meaning,— a waiver of plaintiff's previous failure to produce, or irregularity in producing, the preliminary proofs. The plaintiff's "trouble and expense" in preparing such proofs could not operate to estop the defendant from asserting a right which had no direct relation to or connection with their production.

Were the jury authorized to find, upon the facts recited in the instruction, that it was a fraud on the part of the defendant to insist upon a breach of the condition with respect to an intentional over-valuation? There can be but one answer to the question. The facts recited could not establish an estoppel such as the jury were instructed could arise from them.

Judgment and order reversed, and cause remanded for a new trial.

PATERSON, J., and SEARLS, C. J., concurred.