## PARRISH v. ROSEBUD MINING AND MILLING COMPANY et al.*

### S. F. No. 2631; February 21, 1903.

#### 71 Pac. 694.

**Fire Insurance—Insertion of False Answers by Agent.**—Where an insurance company's agent inserted false answers in an application for a fire policy after full information as to the facts had been given him by insured's manager, such answers constituted no defense to an action on the policy though the answers were declared to constitute warranties.

**Fire Insurance—Insertion of False Answers by Agent.**—The falsity of such answers constituted a valid defense to a policy issued by another company, not represented by such agent, on the same property, based on such application.

**Fire Insurance—Payment During Litigation—Bond for Repayment.**—Where, pending a controversy as to the liability of several insurance companies for a loss, the L. Co. paid insured ninety-five per cent of the face of its policy, and took from insured a bond for repay-

---

*For subsequent opinion in bank, see 140 Cal. 635, 74 Pac. 312.

ment in case a judgment should be rendered adverse to insured in any of the actions contemplated against the other insurance companies, such bond was a guaranty, and not a contract of suretyship, and no recovery could be had thereon if the principal obligation was void for any cause other than the personal disability of the principal obligor.[1]

**Fire Insurance—Payment During Litigation—Bond for Repayment.**—Pending a controversy as to the liability of insurers for a oISS, one of them paid ninety-five per cent of its liability, and took a bond from insured, obligating it to repay such amount in the event that in any of the actions contemplated by insured against any of the other companies named, which had concurrent insurance on the property, a final judgment should be rendered in favor of the "defendant herein." Held, that the word "herein" could not be stricken out, and the word "therein" substituted, since the term "defendant herein" was not improperly applied to the obligee as being defendant in one of the cases enumerated, or as expressing an intention that the "adverse judgment" should be on grounds favorable to such obligee.

**Contract.**—In Construing a Contract the Intention of the parties is to be determined not from the facts as they actually were, but as the parties supposed them to be.

**Fire Insurance—Payment During Litigation—Bond for Repayment.**—Pending a controversy between insured and several insurance companies concerning the latter's liability for a loss, the L. Co. compromised the claim against it, and took a bond from insured, by which the latter agreed that, in the event that in any of the actions contemplated against the other insurers named, a final judgment should be rendered in favor of the "defendant herein," then insured should repay to the L. Co. the amount so paid. Held, that the intention of the parties was to make such repayment contingent on a judgment adverse to insured on the merits in a case involving the same questions as were involved in the controversy with the obligee, and hence a judgment against insured in one of such actions on a defense not available to the obligee did not justify a recovery on the bond.

**Fire Insurance—Payment During Litigation—Bond for Repayment.**—Where insured gave a bond obligating it to repay the proceeds of a policy in the event an adverse judgment should be rendered in suits against other insurers, a recovery could not be had in an action on the bond against an obligor other than insured in an action to which insured was not a party.

APPEAL from Superior Court, City and County of San Francisco; Edward A. Belcher, Judge.

[1] Cited in the note in 105 Am. St. Rep. 508, on contracts of guaranty.

Action by Edwin Parrish against the Rosebud Mining and Milling Company and others. From a judgment in favor of defendant W. S. McCormick plaintiff appeals. Affirmed.

Chickering, Thomas & Gregory for appellant; Lloyd & Wood for respondents.

SMITH, C.—This is an appeal from a judgment for the defendant W. S. McCormick (doing business as McCormick & Co.), and from an order denying the plaintiff's motion for a new trial. The other defendants were not served, and did not appear. The plaintiff is the assignee of the Lion Insurance Company, of London, for collection, and brings the suit upon a bond in the sum of $7,125 executed to the company by this and another defendant. The condition of the bond is: "That if the Rosebud Mining and Milling Company of Colorado, or its assigns, shall in all things stand to and abide by and well and truly keep and perform the covenants and conditions and agreements as set forth in the instrument attached hereto, then the above obligations shall be void; otherwise to remain in full force and virtue." The instrument attached relates to a policy of insurance in the sum of $7,500, issued by the London company to the defendant Rosebud Mining and Milling Company, upon which there has been a loss by fire. It is recited in the instrument: That the Rosebud company is about to institute suits against the London company, the Western Assurance Company of Toronto and other companies enumerated (twelve in all); that "the same questions. both of law and of fact, are or will be involved in all of said actions concerning the liability of said insurance companies"; and that the London company "is desirous of adjusting the said loss without the necessity of litigation, in consideration of the covenants and agreements hereinafter contained on the part of the said" Rosebud company. Then follows: "First," an acknowledgment of the receipt of $7,125 from the London company, "and in consideration of the said payment" a release of the London company from liability on the policy; and, "second," the promise following, that is to say: "The said Rosebud Mining and Milling Company does hereby agree that in the event that in any of said actions by said Rosebud Mining and Milling Company against any of the aforesaid insurance companies to recover upon the

said policies a final judgment be rendered herein, that the said Rosebud Mining and Milling Company will immediately repay upon demand to the said Lion Fire Insurance Company of London the said sum of seven thousand one hundred and twenty-five ($7,125) dollars," being ninety-five per cent of the face of the policy. It is also agreed that upon a settlement with any of the companies the London company "shall receive as favorable terms of settlement for such loss as shall any other company interested therein now or hereafter obtain." But, as the other companies have been settled with on the same terms as the London company (except as to agreement to repay), this part of the agreement may be left out of view. Afterward, in a suit brought by the Rosebud company against the Western Assurance Company of Toronto, judgment was rendered in favor of the latter. But from the facts alleged by the defendant and found by the court to be true it appears that this judgment was based on facts constituting a defense of which the London company could not have availed itself, and that the latter in fact had no meritorious defense to an action on the policy.

The allegations of the answer and the findings of the court in this regard are extremely circumstantial, and therefore too voluminous to be given in detail. Suffice it to say, an application for insurance in the sum of $50,000 was made by the Rosebud company to one Packard, the agent of the London company, by whom the policy in question was issued, with policies of other companies of which he was agent; and by his procurement, and on the same application, the policy of the Toronto company, of which he was not agent, was also issued. In this application, which, by the terms of the latter policy, was made a warranty of the truth of the facts stated, there were two false answers to questions on material points. But these were inserted by Packard himself, after full information as to the facts from the manager of the company, who was assured by him that they were correct, and that he would be responsible for them. Of these facts Toronto company had no notice, but issued its policy exclusively upon the faith of the written application; and in the case against it the decision in its favor was put by the court exclusively on the falsity of the two answers alluded to, and "upon no other." Hence it is apparent—if the facts are as found—that this, which was a sufficient defense in the case of the Toronto com-

pany, could not have been maintained by the London company in a suit on the policy: Wheaton v. North British etc. Ins. Co., 76 Cal. 420, 9 Am. St. Rep. 216, 18 Pac. 758; Farnum v. Phoenix Ins. Co., 83 Cal. 257, 17 Am. St. Rep. 233, 23 Pac. 869; La Marche v. New York Life Ins. Co., 126 Cal. 502, 58 Pac. 1053; Wood on Fire Insurance, sec. 152; Ostrander on Fire Insurance, pp. 131, 384, 385. Hence, it is claimed by the respondent a suit could not be maintained against the former company on its promise to repay the money paid on the policy; nor, such being the case, can the present suit be maintained.

Assuming the former proposition to be correct, the latter must be admitted. The obligation sued upon is a guaranty, as distinguished from the contract of a surety, or an original obligation of the promisor: Civ. Code, secs. 2787, 2794, subd. 2, and sec. 1605, and note to Ann. Civ. Code 1872 and 1901, and Civ. Code N. Y., sec. 1534. It follows, ex vi termini, that, to give it validity, there must be a principal obligation; and that, if the supposed principal obligation be void from any cause other than that of personal disability of the principal obligor, the guaranty is also of no validity: Civ. Code, secs. 2809, 2810; Glassell v. Coleman, 94 Cal. 266, 29 Pac. 508; Kilbride v. Moss, 113 Cal. 434, 54 Am. St. Rep. 361, 45 Pac. 812. The question involved is, therefore, the same as though the suit were on the principal obligation, instead of being on the guaranty. In other words, the question is whether, under the terms of the contract, the plaintiff would be entitled, on the facts found, to recover in a suit against the Rosebud company. If so, he is entitled to recover against the defendant here; otherwise not. The findings of the court, we think, are fully sustained by the evidence, and the plaintiff's case must, therefore, turn upon the sufficiency of the facts found to support the affirmative of this question. On this point the theory of the plaintiff's case is that the rendition of the judgment against the Rosebud company in the case against the Toronto company was one of the contingencies upon which, as provided in the agreement, the promise of the former was to take effect. But in support of this theory it is necessary to assume, and it is in fact tacitly assumed by the appellant, that the agreement is to be read as though, in lieu of "herein" (the word occurring in the instrument as set forth both in the complaint and the findings),

the word "therein" was inserted; for, under the contract as it stands, the contingency described is not merely the rendition of a judgment against the plaintiff, but the rendition of such a judgment "in favor of the defendant herein," which apparently refers to the London company, and, at least, cannot be made to apply to the defendant in the judgment. But no reasons are given by the counsel why such an assumption is either necessary or admissible; nor do we know of any principle or authority to justify it. It is, indeed, true that, where the main intent of a contract is clear, inconsistent words will be rejected (Civ. Code, sec. 1653), or subordinated to it (section 1650); and that, when it can be "seen on the face of the instrument" that the wrong word has been inadvertently used, and that another was intended, the latter may be substituted (Wilson v. Wilson, 5 H. L. Cas. 53, [10 Eng. Reprint, 811]). But to justify such an amendment it must appear upon the face of the contract that the words used by the parties are unsusceptible of a reasonable construction (Civ. Code, secs. 1638, 1641, 1643, 1652), or inconsistent with "the main intention of the parties"; or that the substituted word is in fact the word, or the equivalent of the word, intended. But here none of these conditions occur. That the word intended was other than the word used is nothing more than a bare surmise or guess; nor would the proposed amendment be consistent with the general or main intention of the parties; and, finally, the agreement as it stands admits of a rational construction, consistent with that intention, for the term "the defendant herein" is not improperly applied to the London company as being defendant in one of the cases enumerated, and, if the intention was to designate as the condition of the promise a judgment in any of the cases specified favorable, or upon grounds favorable, to the London company, this is not inaptly expressed by the terms used; i. e., "a final judgment . . . . rendered in favor of the defendant herein." Nor is there any grammatical impropriety in the use of the term "defendant," as relating to the cause of action or claim existing in favor of one of the parties against the other, on which, it is recited, a suit was contemplated.

These considerations of themselves dispose of the proposed alteration of the agreement—as to which it is sufficient that there is nothing on the face of the instrument to justify it.

But the substituted term is also open to the objection that it would be inconsistent with the general or main intention of the parties as manifested by the agreement itself, and the circumstances attending it. The effect of the agreement, briefly stated, was that the money was to be repaid upon a judgment adverse to the promisor and of the character specified in any of the suits enumerated as "involving the same questions both of law and fact," from which it must necessarily be inferred that the main intention of the parties was to make the stipulated repayment contingent upon a judgment adverse to the promisor in a case involving the same questions, which is, in effect, to say, on the merits; for the intention of the parties is to be ascertained, not from the facts as they actually were, but from the facts as the parties supposed them to be, and hence it must be supposed that the ultimate end or purpose of the agreement was to leave the question between the parties to be determined on the merits, and that the enumeration of the cases supposed to be of the character described was merely subsidiary. The actual intent or understanding of the parties was, therefore, in no wise different from what it would have been had the instrument, without enumerating cases, provided for the return of the money in the event of a judgment for the defendant in any case of the character described. This conclusion is also confirmed by the circumstances of the case, which render any other incredible; for, not to mention other circumstances, the amount paid on the claim (ninety-five per cent of its face value) indicates that the parties were practically satisfied of its validity, and this is unmistakably shown by the written opinion of the attorneys of the London company, based upon a thorough discussion of the facts of the case, and of the several questions of law and fact involved, and by their advice to the company "to adjust the loss on reasonable terms." Nor is there anything in the agreement to indicate any substantial doubt as to the validity of the claim. The recital that the London company "is desirous of adjusting the . . . . loss without the necessity of litigation," indicates nothing more than a desire to avoid the impending litigation against itself by leaving the question to be determined in another and similar case; and as the London company, in the event it should turn out it was mistaken as to its liability, might otherwise be precluded from recovering the money paid in consideration of the re-

lease, it was but a reasonable precaution to exact from the Rosebud company a promise to repay the money in such event.

It is clear, therefore, that the terms proposed for substitution would be inconsistent with the general or main intention of the parties; and hence, were the substitution made, it would still be a question whether, under the familiar rules governing the interpretation of contracts, it would not be necessary to disregard the word substituted as inconsistent with that intention. We do not propose to pass definitely on this question, but as the principles and authorities bearing upon it bear also upon the question we have been discussing, and the questions themselves are closely related, it will not be out of place briefly to refer to them as confirmatory of the conclusion we have reached. "An agreement," it is said, "ought to receive that construction which will best effectuate the intention of the parties, to be collected from the whole of the agreement"; and, to effect this, greater regard is to be had to the clear intention of the parties than to any particular words which they have used in the expression of their intent. "These two rules," it is added (referring to the rule above stated and the rule that words "are to be understood in their plan and literal meaning") "would seem sometimes to be in conflict, but they came substantially to this: 'Men will be taken to have meant precisely what they have said, unless, from the whole tenor of the instrument, a definite meaning can be collected, which gives a broader interpretation to specific words than their literal meaning would bear' ": Anson on Contracts, 252, 253. The same rules are given no less definitely in the Civil Code: "A contract must be so interpreted as to give effect to the mutual intention of the parties": Sec. 1636. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity": Sec. 1638. "The intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of the title": Sec. 1639. "A contract must receive such an interpretation as will make it . . . . reasonable, . . . . if it can be done without violating the intention of the parties": Sec. 1643. "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates": Sec. 1647. "However broad may be the

terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract'': Sec. 1648. Hence, ''particular clauses of a contract are subordinate to its general intent'' (section 1650) ; and ''words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected'' (section 1653) : See, also, Pollock on Contracts, 434–437; Anson on Contracts, 159. Under these rules it might be held—were the agreement as it is assumed to be—that the name of the Toronto company, mistakenly inserted in the list of cases enumerated, should be rejected, or disregarded as inconsistent with the main intention of the parties, and hence, a fortiori, the proposed amendment of the language used by the parties must be held to be inadmissible.

It is proper to add that the present suit cannot be regarded as ultimately determining the question of liability of the defendant. Whether or not the Rosebud company has a good defense to the plaintiff's action can be determined finally only by a judgment to which it is a party—the cases of all the other companies having been settled. The plaintiff may, therefore, upon proof of the invalidity of the claim of that company on the policy, yet recover judgment against it either in this suit or in another. In such case he would then be entitled to recover on the guaranty, though until then he cannot do so.

I advise that the judgment and order appealed from be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.