# CHARLES SCHAEFFER vs. FARMERS' MUTUAL FIRE INSURANCE COMPANY OF DUG HILL, CARROLL COUNTY.

*Fire Insurance—Forfeiture of Policy—Increased Risk—Use of Steam Engine—Notice to Insurer—Examination of Premises—Unsigned Bill of Exceptions.*

When payment of a loss insured against is resisted on the ground that the policy was forfeited, the insurer must show both that the policy in express terms, or by clear implication, contains some provision forfeiting the policy in specified contingencies, and also that the insured has brought himself within the scope of such provision.

A policy of fire insurance in a mutual company covered certain farm buildings, tan shop, bark shed, etc. On the day of the loss an engine was stationed on the premises about fifty feet from the bark mill, and used for the purpose of grinding bark. The engine had been used once a month for this purpose for more than a year and a half previously. While the engine was not running a fire broke out in the bark mill and consumed the tannery buildings and the stock in trade, but there was no evidence to show the origin of the fire. The policy prohibited the use of any steam engine temporarily employed for the purpose of threshing out crops of any kind. *Held,* that the use of an engine for grinding bark was not within the above cause of forfeiture.

Another clause of the policy provided that in the event of an engine being stationed on the premises in proximity to the buildings insured, then the president of the company should appoint a committee to examine the same and ascertain the amount of the increased risk, and, if increased, an additional premium note should be given by the insured. Ten days before the fire the insured notified the defendant's general agent that he was using the engine as above stated, for grinding bark, and that he was willing to do or pay anything necessary for the protection of the property. The agent refused to give a permit for the use of the engine, and no committee to examine the premises was appointed. *Held,*

1st. That the employment of the engine did not necessarily result in a forfeiture of the policy, but if the risk was thereby increased, and no additional premium note was given, the insurer would be released from liability, unless it had neglected for an unreasonable time to make the examination provided for.

2nd. That it was the duty of the insurer to appoint a committee to ascertain forthwith whether the risk had been increased by the use of the engine, and a failure to do so for an unreasonable time after said notice, was no defence to plaintiff's right to recover.

3rd. That the notice to the general agent was notice to the company, it being his duty to communicate it, and the refusal of the agent to give the permit asked for made no difference, because no permit was needed.

4th. That whether the period between the date of the notice and the occurrence of the loss was a reasonable time within which the committee ought to have been appointed, was a question of fact for the jury.

5th. That if this was a reasonable time, and the risk was increased by the use of the engine, and loss resulted therefrom, the company would still be liable, because it could not rely upon the failure of the plaintiff to give an additional premium note, when that failure was due to the company's neglect to examine the premises.

6th. That if the use of the engine increased the risk, and no additional note was given, the right to recover would not be defeated, unless the loss occurred from that increased risk, and this was a question of fact for the jury.

7th. That if the use of the engine did not increase the risk, then the policy would not be affected.

The above policy also provided that it should be forfeited in the event of alterations in the premises which increase the risk, or the use thereof for carrying on any trade which, according to the by-laws and conditions, class of hazards and rates annexed to the policy, would increase the risk. *Held,* that the use of the engine, as above stated, was not an alteration in the insured premises, and that it was not a carrying on of a trade which, according to the by-laws, &c., increased the hazard, because the by-laws do not so declare, and because there was no class of hazards annexed to the policy.

Where there is no forfeiture of the policy there can be no waiver of forfeiture, and hence evidence and prayers relating to the question of waiver are properly rejected.

Notice to a general agent of an insurance company is notice to the company.

Where an unsigned bill of exceptions is connected by apt reference in a succeeding bill, the Court will consider its recitals of facts, but not the ruling excepted to.

Appeal from the Circuit Court for Carroll County. The case is stated in the opinion of the Court. The policy sued on provided "that in case the above mentioned premises

shall at any time, after the making and during the time this policy would otherwise continue in force, be so altered, or be appropriated, applied or used, to or for the purpose of carrying on or exercising therein any trade, business or vocation, which, according to the by-laws and conditions, class of hazards, or rates hereto annexed, would increase the hazard, unless it be by the consent and agreement in writing of this corporation added to or endorsed upon this policy, then and from thenceforth, so long as the same shall be appropriated, applied or used, this policy shall cease and be of no force or effect."

The sixteenth and seventeenth conditions of insurance in the policy are as follows :

16. This company will not become responsible for any loss or damage by fire to any property insured in this company, resulting from the use of any steam engine temporarily employed for the purpose of threshing out crops of any kind.

17. That in the event of an engine being stationed on the premises, and in close proximity to the buildings insured by this company, then, in that event, the president of the company shall appoint a committee of three discreet men, who shall be members of the company, who shall proceed forthwith to said property to make a fair and impartial examination, in order to ascertain the amount of increased risk on account of said engine ; and if they shall find that the risk is increased thereby, then they shall take an additional premium note for such increase, upon which the assured shall pay ten percentum at the time of the execution, and said note to be subject to the same assessments as other notes of said company, to meet losses by fire happening to property insured by this company. The expenses of the committee to be paid by the assured.

The plaintiff's first, second and third prayers related to the question of waiver. His other prayers were as follows :

*Plaintiff's 4th Prayer.*—That if the jury shall find from all the evidence that the general agent of the defendant

company had knowledge of the use by the plaintiff of an engine at the tannery of the plaintiff, mentioned and set out in the policy of insurance before the time of the fire, to-wit, on February 17th, 1892, if they shall so find, then the knowledge of the general agent is the knowledge of the defendant company.

*Plaintiff's 5th Prayer.*—That if they shall find that the general agent of the defendant company had knowledge before the loss by fire offered in evidence, that the plaintiff was using and had been using an engine at the tannery of the plaintiff, if they shall so find; and shall further find that the policy of insurance had not been cancelled by the defendant company until after the fire, to-wit, on the 16th day of September, 1893, if they shall so find, then the jury may find that the defendant company assented to the use of said engine.

*Plaintiff's 6th Prayer.*—That the true construction of the contract offered in evidence is, that if the jury shall find that the general agent of the defendant company had knowledge on February 17th, 1892, that the plaintiff was using and had been using for a year or more an engine at the tannery of the plaintiff insured in said policy of insurance, if they shall so find; and shall further find that defendant company did not cancel said policy of insurance until the 16th day of September, 1893, if they shall so find, then the defendant company assented to the use of said engine, even though they may further find that defendant company, by its resolution of March 19th, 1892, if they shall so find, declined to pay said loss.

*Plaintiff's 7th Prayer.*—That if the jury shall find from the evidence in this cause that a policy of insurance was issued to the plaintiff by the Carroll County Mutual Fire Insurance Company in March, 1887, on the property of the plaintiff; and shall further find that said insurance was issued under and by the written permission of the general agent of the defendant company; and shall further find that before the loss sued for in this case, and since the insur-

ance was effected in the Carroll County Mutual Fire Insurance Company, the plaintiff paid to defendant company three (3) or four assessments on his premium note, if they shall so find, then the defendant company is estopped from setting up the insurance in the Carroll County Mutual Fire Insurance Company, if they shall so find, as a defence to this action.

The defendant's second prayer was: "That if the jury shall find that the plaintiff's tannery was insured in the defendant company, as set out in the policy of insurance offered in evidence; and shall further find that the defendant, on the 17th day of February, 1892, applied to the general agent of the defendant company for a permit to use a steam engine, for the purpose of grinding bark at his said tannery, and was told by said agent that a permit for said purpose would not be granted to him; and shall further find that, notwithstanding said refusal to grant him a permit for the purpose aforesaid, the plaintiff engaged a portable steam engine, and had the same in use on the 27th day of February, 1892, and had so used said engine for more than a year prior thereto to do grinding of bark at said tannery; and shall further find that said engine was, when in use as aforesaid, stationed within fifty feet, or thereabouts, from said tannery on said day, and that the same was connected by means of a strap and pulley to machinery in said tannery, for grinding bark, as mentioned in the evidence; and shall further find that said engine was being used on the day of said fire, for the purpose of grinding bark as aforesaid, then the plaintiff is not entitled to recover."

The Court below (ROBERTS, C. J.), rejected all of the prayers of the plaintiff, and granted the second prayer of the defendant; and the verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Harry M. Clabaugh* and *George R. Gaither, Jr.,* (with whom were *John M. Roberts* and *Jos. D. Brooks* on the brief), for the appellant.

*James A. C. Bond* for the appellee.

The facts of this case so closely resemble those of the *Hull case,* 77 Md. 500, that any attempt to distinguish them must fail. The following facts appear in this record: The plaintiff, as the owner of a tannery and bark mill (where bark for the tannery was ground being same building), had for one year and a half used this same engine for the purpose of grinding and preparing his bark. That on the day of the fire he *stationed it within* 50 *or* 60 *feet of his bark mill and tannery* (the limit of the strap) and began operating the mill by means of said strap and pulley connected with the engine. Began grinding bark about 8 o'clock in the morning of the day of the fire, with 75 to 90 pounds of steam, and ran the engine till little after 11 o'clock of that day, when it was stopped for dinner. When they stopped for dinner, left the engine with fire in grate and about 50 or 60 pounds of steam on. No one was left with engine when they went to dinner, and no one present when fire occurred, which consumed the mill and tannery. The fire occurred about one-half hour after they left for dinner and whilst they were at dinner. The distance of the dwelling house, where they were at dinner, from the mill and tannery, was 150 yards. The foregoing are the undisputed facts of the case as shown by the plaintiff himself, his manager, Hesson, and his man Hoppie operating the engine on day of fire. Did the plaintiff have the permission of defendant to use the engine on that day? It appeared in the Hull case that he did not have the permission and did not ask for it. In this case the plaintiff says he asked for such permission of Joseph Shaeffer, the general agent of the defendant, the day after Hull's fire, but that said agent *refused to give it.* And the agent says that he not only refused the permission asked for, but assigned as the ground of his re-

fusal that grinding bark "came under the head of manu-facturing," and he could not give it.

Hence it will be found that every condition of fact is present in this case which appeared in the other. The action is against the same company, on a similar and identical policy, for a loss occasioned by the same engine (ten days apart), stationed about the same distance from the buildings, under like circumstances and used by plaintiff in disregard of the terms of his contract and against the *explicit refusal* of the defendant to grant him the privilege of so using it. The parallel is complete. And so the Court below, following the authority of the previous case and precedent, gave directions to the jury in conformity with it by granting defendant's 2nd prayer, and thus determining the rule of law by which the case should be governed. All the other questions sought to be raised in the progress of the case were and are of an unimportant and undecisive character and of minor consequence. There was but one single question in the case, and that was of controlling importance, which was the one passed on by the Court, as before stated.

I might advert to the question of waiver raised, but that also has been so authoritatively discussed in the case referred to, that it would be useless to recapitulate the argument and cite authorities. Hull paid the assessment before bringing suit; this plaintiff did not pay until after he had brought suit, which he did on the 24th day of May, 1892, having full knowledge at the time of the resistance on part of the company of his claim, to the extent of requiring suit to be brought.

*Chas. T. Reifsnider* and *Chas. T. Reifsnider, Jr.*, also filed a brief for the appellee.

McSHERRY J. delivered the opinion of the Court.

The appellant's tannery, bark-mill and stock in trade, which, with other property owned by him, were insured under one and the same policy issued by the appellee, were destroyed by fire on February the twenty-seventh, 1892.

Due preliminary proof of loss was made, and subsequently suit was brought upon the policy to recover the amount of insurance written on that portion of the property which had been burned. During the progress of the trial in the Circuit Court for Carroll County, five exceptions were taken. The second one of these, though it appears in the record, was not signed by the Judge. It cannot, therefore, be considered by us beyond its recitals of facts. These, by reason of the unsigned bill of exceptions being connected with the succeeding one, form part of the latter. *Cooper* v. *Holmes*, 71 Md. 20. The first, third and fourth bills of exception relate to questions of evidence, and the fifth to the several prayers presented by both parties. The verdict and judgment were against the plaintiff and he has appealed.

It will obviate much unnecessary discussion if we proceed at once to an examination of the fundamental and controlling questions involved in the controversy, instead of considering separately the several exceptions in the order in which they appear in the record.

The defendant resists the claim of the plaintiff on the ground that the unauthorized use by the plaintiff of a steam engine located about fifty feet away from the bark mill, but connected with the machinery in the latter by a leather band, worked a forfeiture of the policy under the terms and conditions set forth therein and endorsed thereon. And it relies in support of this position on the recent case of *The Farmers' Mut. Fire Ins. Co.* v. *Hull*, 77 Md. 498. On the other hand the plaintiff insists, first, that the use of the steam engine for the purpose of grinding bark did not cause a forfeiture; and, secondly, that even if a forfeiture did occur, the defendant unequivocally waived it.

It can scarcely be necessary to reaffirm what has been so often and so uniformly decided, that forfeitures by mere implication are never favored in the law. A company which resists, on the ground of forfeiture, the payment of a loss against which it has insured, must show both that its policy or written contract contains, either in express terms or by

clear implication, some provision forfeiting the policy in speci-
fied contingencies; and also that the insured has brought
himself within the scope and conditions of that provision.
The policy is a contract between the insurer and the insured,
and as they have written it, and not otherwise, so Courts
must construe and enforce it. To the policy, then, and to
all that forms a part of it, must resort be had to ascertain
not only whether a forfeiture is in fact provided for, but the
conditions and circumstances under which it becomes appli-
cable and effective.

In the body of the policy now before us there are two
causes of forfeiture; and in the conditions of insurance
thereto annexed and in the by-laws, made a part thereof by
reference, there are three more. Those first alluded to
relate, the one to the taking out by the insured, without
notice to the insurer, additional insurance on the same prop-
erty in a different company; and the other, first, to altera-
tions of the premises, and secondly, to their use for the
purpose of carrying on therein any trade or business " which,
according to the by-laws and conditions, class of hazards or
rates hereto annexed, would increase the hazard," unless by
the consent of the insurer endorsed upon the policy. Those
set forth in the conditions are, first, alterations made in any
building which increases the risk; secondly, the omission
for thirty days after demand to pay any assessment levied
on the assured's premium note; and thirdly, the sixteenth
condition, which, without qualification, prohibits the use of
" any steam engine temporarily employed for the purpose
of threshing out crops of any kind."

Under the policy sued on, which was issued in February,
1887, and covered a period of seven years, the appellant's
dwelling-house, household furniture, tenant-house, wagon-
shed, barn, hay-shed, and other farm buildings and farming
implements, together with his tan-shop, bark-shed, bark-mill
house, stock in trade, consisting of bark, hides, leather, fin-
ished and unfinished, were all insured. The engine used
on the premises the day of the fire was not located at the

barn or employed for the purpose of threshing out crops of any kind, but was stationed between fifty and sixty feet away from the bark-mill house and was, and for more than a year and a-half previously had been used once a month to furnish the motive power for grinding bark for the plaintiff's tannery. On the day of the fire the engine was in use for grinding bark, and whilst the employes were at dinner and the engine was not running and its fires were banked, a fire broke out in the bark-mill house and consumed the tannery buildings and stock in trade. When first discovered the fire was within the building, whose sides towards the engine were tightly weatherboarded and stripped. Earlier on the same day a slight fire broke out about the same spot, but was promptly extinguished. There was evidence tending to show that the first fire was produced by the friction of the machinery, but there is no evidence whatever in the record to show what caused the second and destructive fire.

It is not pretended that the first of the two causes of forfeiture set forth in the body of the policy, and the second of those contained in the conditions and by-laws, have any relation to the case at bar. There was other insurance in a different company, but it was taken out only after notice had been given to, and a written permit had been procured from, the general agent of the defendant. The third of the causes of forfeiture contained in the conditions, being the one numbered sixteen, was the one under consideration in *Hull's case*. Hull stationed a portable engine within thirty feet of his barn, and connected it by a strap and pulley with machinery in the barn, and used it there in chopping and threshing his grain. The barn was destroyed by fire whilst the engine was so used, and we held that the policy, which was identical in terms with the policy in this case, and was issued by the same company, though, of course, covering different property, was forfeited. The conduct of Hull was directly within the terms of the sixteenth condition endorsed on the policy, and there was no possible escape from the conclusion that his policy was forfeited thereby, and, hence,

the only contention in that case was whether the company had waived this forfeiture.

Apart from other provisions of the policy now under examination, it is clear that an engine regularly employed in grinding bark for use in a tannery in the process of tanning leather, is not a "steam engine temporarily employed for the purpose of threshing out crops of any kind," and is not within the sixteenth condition, and is not, therefore, the cause of forfeiture specified therein. It is manifest that this provision was intended to prohibit the use of engines for the purpose of threshing out crops in the vicinity of barns and other equally inflamable farm buildings; and, imposing as it does, a forfeiture for such a use, it must be strictly confined in its application to cases within its terms as written, and is not to be enlarged to include by implication another class of circumstances neither within its letter nor its evident design. In the vital particular that the use made of the engine by the appellant was not a use prohibited or at a place prohibited by the sixteenth condition on the policy, the case at bar is widely distinguishable from *Hull's case.* That condition cannot control this case unless restrictions and inhibitions which are not there now are first imported into it by mere construction.

That this view of the limited scope and effect of the sixteenth condition is the correct one, is made even more apparent, by other and different provisions embodied in the seventeenth condition, which was obviously framed to meet a class of cases not covered by the sixteenth condition. Whilst this latter condition provides without qualification of any sort that "this company *will not become responsible for any loss or damage by fire* * * * * resulting from the use of *any steam engine temporarily employed for the purpose of threshing out crops of any kind,*" the seventeenth condition distinctly and in terms recognizes the liability of the company for losses or damage by fire resulting from the use of other steam engines than those referred to in the sixteenth condition, and specifically prescribes what shall be done by

the company and by the insured when such other steam engines are employed; but it no where imposes a forfeiture. The seventeenth section or condition is in these words: "That in the event of an engine being stationed on the premises, and in close proximity to the buildings insured by this company, then, in that event, the president of the company shall appoint a committee of three discreet men, who shall be members of this company, who shall proceed forthwith to said property to make a fair and impartial examination, in order to ascertain the amount of increased risk on account of said engine; and if they shall find that the risk is increased thereby, then they shall take an additional premium note for such increase, upon which the assured shall pay ten percentum at the time of the execution, and the said note to be subject to the same assessments as other notes of said company, to meet losses by fire happening to property insured by this company." The plain meaning of this is, that if an engine other than those referred to in the sixteenth condition is stationed on the insured premises, ascertainment shall be made in the method pointed out, whether the risk has been increased thereby or not; and if it be found that the risk has been increased, then it is provided, not that the policy shall be forfeited, but that an additional premium note shall be given upon which ten per cent. must be paid; but if it be found that the risk has not been increased, then neither is the policy forfeited, nor is an additional premium note demandable. The employment, therefore, of such an engine as the seventeenth clause contemplates, does not result under its terms in a forfeiture of the policy or even necessarily in increasing the risk; but if the risk be increased by the use of such an engine, and loss by fire is occasioned thereby, then the insurer, in the event that no additional premium note has been given, will be released from liability under the policy unless it has neglected to appoint the committee and to make the examination provided for; but, if thus released, it would be upon altogether different principles. It would

be released, if released at all, because it is the settled law, even in the absence of an express provision on the subject in the policy, that when the erection by the insured of an adjacent building, and, of course, the use by him of an adjacent steam engine, has caused a material increase of risk by fire to the property insured, and when the loss was produced by such increase of risk, a recovery on the policy would be denied. *Wash. Fire Ins. Co.* v. *Davison and Symington*, 30 Md. 102. Under this seventeenth clause it becomes the imperative duty of the president of the company, when a steam engine has been stationed on the premises in close proximity to the buildings insured, to appoint a committee of three members of the company to examine forthwith whether there has been an increase of risk on account thereof. Good faith towards and frank dealing with the assured, no less than the explicit words of the provision itself, require that this duty should be discharged, if not " forthwith," upon the company being apprised of the existence of the conditions on which its performance depends, at least with due and proper diligence thereafter. Obviously a failure for an unreasonable time after notice to do that which it is the company's plain duty to do forthwith, offers no defence to a plaintiff's right to recover.

The record shows that ten days before the fire the plaintiff notified the defendant's general agent, whose duty it was to attend to all its business in his territory, that he, the plaintiff, was then using the engine for grinding bark, and that he was willing to do and to pay anything that might be necessary for the protection of the property in the event of fire, and that he wanted to be made safe in his insurance on the tan-yard. This was notice to the company. *May on Insurance, sec. 152; Union Mut. Life Ins. Co.* v. *Wilkinson*, 13 Wall. 222. We are not dealing with the question of the agent's power or authority to waive or vary a condition of the policy, but only with the proposition that notice of the character we are considering given to the general agent of the company is notice to the company itself. And it was

notice to the company because it was the duty of the agent to communicate it to his principal. It can make no possible difference that the agent when so notified declined to give a permit for the use of the engine, because under the seventeenth condition no permit was needed, but another method was provided. Whether the period that elapsed between the date of this notice and the subsequent fire was a reasonable time within which the company ought to have appointed the committee of three members under the seventeenth condition, was a question of fact for the jury to determine under all the attendant circumstances. *Rokes* v. *Amazon Ins. Co.* 51 Md. 519. Under this seventeenth clause, whilst there was no forfeiture declared or even implied, there are two contingencies presented. There is the contingency that the use of the engine would increase the risk under which two different aspects are presented; and there is the opposite contingency that it would not. In the latter event the policy would in no way be affected, and the right to recover on it would not be impaired. In the event that the risk was materially increased and no additional premium note was given, then the right to recover was not defeated unless the loss occurred in whole or in part from that increased risk; and this is a question of fact for the jury to find. If, again, the risk was materially increased and notice was given to the company and no additional premium note was given, solely because of unreasonable delay on the part of the company in making an examination to ascertain the amount of the increased risk, and loss resulted by fire occasioned by such increased risk, still the company would be liable, because it would not be permitted to invoke in its defence the failure of the plaintiff to give an additional premium note when that failure was due exclusively to the company's own omission or neglect to perform its precedent duty within a reasonable time. In no view, then, that can be taken of the sixteenth and seventeenth clauses, was there a forfeiture of the policy.

The remaining causes of forfeiture stated in the policy and in the conditions thereto annexed, are those which

relate to alterations in the premises or buildings which increase the risk and to the use thereof for the purpose of carrying on therein any trade or business, which, according to the by-laws and conditions, class of hazards and rates annexed to the policy would increase the hazard.   There is no evidence that there were alterations made in the premises or buildings after they were insured.   When the policy was issued the buildings used in the tannery business were described in the policy, and distinctly insured as buildings pertaining to that occupation, and it is not intimated that they were used thereafter for the purpose of carrying on any different trade or business. Nothing, then, in the structures themselves, or in the business conducted therein, was changed or altered after the insurance had been granted ; and unless placing and operating the engine fifty or sixty feet away from the bark-mill house amounted to an alteration in the insured premises, or to a use of them for carrying on a trade, which, according to the class of hazards and rates annexed to the policy, would increase the hazard, there is nothing in either of those provisions which has the slightest reference to the case at bar.   That the engine so placed and so operated did not amount to an alteration in the insured premises in the sense in which the terms used in the policy are invariably interpreted can admit of no doubt.   Those terms mean an alteration in the thing insured.   *Washington Fire Ins. Co.* v. *Davison and Symington,* 30 Md. 102. That an engine employed as this one was, was not a use of the premises for carrying on a trade or business, which, according to the by-laws and conditions, class of hazards and rates annexed to the policy, would increase the hazard, is equally free from doubt, because the by-laws and conditions do not expressly or impliedly so declare, and because there is no class of hazards or rates annexed to the policy at all.   There is consequently no standard as to what would increase the risk, furnished by any by-law, condition, class of hazards or rates.   To avoid any misunderstanding, we repeat that if without notice to the insurer the use of

the engine as described did in fact materially increase the risk, and if the loss was occasioned by that increased risk, the insurer would be relieved from liability. But these are facts to be found by the jury.

As there was no forfeiture of the policy, there could be no waiver of a forfeiture that never existed, and hence the evidence offered and objected to in the first, third and fourth exceptions tending to prove a waiver was irrelevant, and was for that reason properly excluded. The plaintiff's first, second and third prayers, which were confined to the question of waiver, were also properly rejected, because there was no question of waiver involved, and there could be none where there had been no forfeiture. The fifth and sixth prayers were wrong and were properly rejected. As there was no forfeiture, there was no right in the company to cancel the policy, and a delay in an abortive cancellation was of no consequence one way or the other, as respects the plaintiff's right to recover. The fourth and seventh prayers were right, and ought to have been granted. The fourth has relation to the knowledge of the agent being the knowledge of the company; and the seventh refers to the insurance in a different company. All of the defendant's prayers except the second were rejected, and that one ought to have been refused. Its vice is that it construes the policy to mean that the use of the engine under the circumstances stated of itself, forfeited the policy. We have already discussed that question and have reached a different conclusion.

For the error in rejecting the plaintiff's fourth and seventh prayers, and in granting the defendant's second, the judgment must be reversed and a new trial will be awarded.

*Judgment reversed with costs above and below, and new trial awarded.*