## AMERICAN SURETY CO. OF NEW YORK v. FIRST NAT. BANK OF ASHLEY.

### No. 6285.

Circuit Court of Appeals, Third Circuit.

April 29, 1938.

Welles, Mumford & McGrath and C. H. Welles, all of Scranton, Pa., and James M. Magee, and E. W. Arthur, both of Pittsburgh, Pa., for appellant.

M. F. McDonald and Thomas F. Farrell, both of Wilkes-Barre, Pa., and Reese H. Harris (of O'Malley, Hill, Harris & Harris), of Scranton, Pa., for appellee.

Before DAVIS and THOMPSON, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

Designating the parties as they stood in the District Court, the plaintiff has appealed from an order of the District Court dismissing its bill in equity in which it sought to be subrogated to certain alleged rights of the borough of Ashley, school district of Ashley, and county of Luzerne, Pa., hereinafter called the tax districts, against the defendant.

There are two questions at issue. The first one is whether or not the tax districts have any rights against the defendant to which the plaintiff could be subrogated, and the second is whether or not the plaintiff has shown that it is entitled to subrogation by showing that as between the defendant and itself the defendant should bear the loss here involved.

The facts are as follows: From 1918 to and including 1929, Thomas Henichek was tax collector for the tax districts. As such, he furnished an official bond each year on which the plaintiff was surety.

The condition in these bonds was that Henichek "shall and will well and truly, collect and pay over, account for, according to law, the whole amount of taxes charged and assessed in the Duplicates which shall be delivered to him and faithfully discharge the duties appertaining to the office of Collector of Taxes. * * *" In 1927 the principal amount of his official bond was $20,000, in 1928 it was $30,000, and in 1929 it was $35,000.

John M. Jones was the plaintiff's general agent in the tax districts, and had been such for about ten years. He passed on the risk, received payment of premiums, delivered the bonds, and performed other duties of a general agent.

It appears that Henichek deposited all of the taxes collected by him in the defendant bank in an account designated "Thomas Henichek, Jr., Tax Collector," and that the defendant knew that all of the money deposited in that account was for taxes.

The evidence indicates that Henichek was often late in settling the tax duplicates, and while there is no proof that he ever acted dishonestly, it does appear that he did not or could not collect all of the taxes assessed. A practice developed, of which the plaintiff was aware through its agent, Jones, whereby the defendant would loan Henichek money each year on short term notes to enable him to pay the delinquent taxes to the tax districts and thus clear up the duplicate for the previous year. In 1924, the defendant loaned him $6,000; in 1925, $8,000; in 1926, $12,500; and in 1927, $18,000. The defendant deposited the proceeds of these loans in the "tax collector" account, and when the notes became due, it charged them to the same account. In 1928 Henichek was unusually late in clearing his duplicate for 1927, and there was $39,154.94 in taxes uncollected on the 1926 and 1927 duplicates. On October 3, 1928, the borough of Ashley appointed a committee to consult Jones and to ascertain the procedure necessary to collect from the plaintiff the balance due on the duplicates. This committee reported five days later that Jones had informed it that procedure against the plaintiff would not yield results for two years. It also reported that it had discussed the matter with the deputy controller and the solicitor for the county commissioners for Luzerne county, and that Henichek had requested that he be given two weeks' time to settle, ascribing his delay to the failure of many taxpayers to pay their taxes. W. A. Edgar, treasurer for the borough of Ashley, cashier in the defendant bank, and sub-agent for Jones, discussed the matter further with Jones and informed him that the bank was considering making a loan to Henichek in the sum of $25,000, on the security of the uncollected taxes on the 1926 and 1927 duplicates. On October 20, 1928, the bank loaned Henichek the $25,000 on three thirty-day notes, and, according to its custom, deposited the money in the "tax collector" account. Henichek then paid the tax districts and cleared his duplicates for 1927. On the date the notes became due, the bank charged them to the same account, thereby receiving payment in full.

It does not appear clearly from the record whether or not Henichek or his successor ever thereafter collected an amount equal to the loan on the 1926 and 1927 duplicates. It does appear, however, that by 1931 there was a shortage in Henichek's account on the 1927 duplicate of only $340.54.

In 1931, the plaintiff paid the tax districts sums amounting to $36,193.73 for shortages in Henichek's account. This sum included shortages of $340.54 in the duplicate for 1927; $23,039.14 and $4,440.94 on the duplicate for 1928; and $8,373.11 on the duplicate for 1929. The plaintiff was able to collect $7,603.15 from property and liens assigned to it by Henichek, and thus reduced its loss to $28,590.58.

On November 13, 1934, the plaintiff filed its bill in equity in the District Court, in which it sought to be subrogated to certain alleged rights of the tax districts against the defendant. It alleged that the defendant had participated in a breach of trust by charging the loan of $25,000 which it described as "personal obligations" of Henichek, to the "tax collector" account knowing that this account contained only tax money. It also alleged that the defendant had permitted Henichek to withdraw $1,632 for his own use.

The District Court found that there was no evidence relating to the alleged misappropriation of the $1,632, and, without deciding whether or not the tax districts had any rights against the defendant, held that the plaintiff had not shown that as between it and the defendant, the de-

fendant should bear the loss. So holding, it dismissed the bill and plaintiff appealed to this court.

We agree with the District Court that there was no evidence of the alleged misappropriation of the $1,632.

The first question as above stated is whether or not the tax districts have any rights against the defendant to which the plaintiff could be subrogated.

The evidence fails to show the existence of any such rights. In the first place, there is no proof that the tax districts suffered any loss by reason of the repayment of the loan out of the tax account. It merely shows that Henichek failed to collect $39,154.94 in taxes assessed in the 1926 and 1927 duplicates; that he borrowed $25,000 in order to clear up his 1927 duplicate; and that he paid the proceeds of that loan to the tax districts. Having charged himself with that sum, he would be entitled to retain an equal amount out of any taxes collected by him on the duplicates for 1926 and 1927 after the loan had been made. 61 C.J. p. 1029. If he could do this, he could obviously apply such sums to the payment of the loan of $25,000. Thus, in order to establish that the tax districts have any rights against the defendant, it would be necessary to prove that no money, or, at least, not $25,000, was collected on the 1926 and 1927 duplicates after the loan had been made. Furthermore, the plaintiff has not shown that the authorities of the tax districts were in ignorance of the practice that had grown up between the defendant and Henichek with reference to the yearly loans and the consequent repayment of those loans out of the tax account. Indeed, there is evidence from which it can be inferred that this practice was known by them, and, if not approved, at least acquiesced in by them. Without proof of lack of knowledge on their part, such cases as Bank of Giles County v. Fidelity & Deposit Co., 4 Cir., 84 F.2d 321, cited by the plaintiff, are inapplicable. So also are those cases involving misappropriations and embezzlements, since there is no evidence of any misappropriation in this case. Indeed, under the evidence set forth in the record it might well be considered "grossly unjust" if the tax districts, having accepted the proceeds of the loan, would object to its repayment (Fifth National Bank v. Village of Hyde Park, 101 Ill. 595, 40 Am.Rep.

218), particularly if they knew and approved of the loan when made.

The plaintiff has not shown that the tax districts have the rights claimed against the defendant.

Even if the evidence produced by the plaintiff were sufficient to prove the existence of the rights which it claims, it has nevertheless failed to show that it is entitled to be subrogated to them against the defendant.

The plaintiff, as compensated surety on the official bond of Henichek, in effect, insured the tax districts that he would "collect and pay over * * * the whole amount of taxes charged and assessed in the Duplicates." When Henichek failed to collect all of the taxes so assessed, the plaintiff became liable on the bond on the very contingency insured against. It could have paid its liability in 1928 when the borough committee applied to it for this purpose. If it had done so, instead of telling the committee that it would take them two years to realize anything on the bond, it would have been entitled to the taxes that remained uncollected on the 1926 and 1927 duplicates, at least up to the amount of its liability. Commonwealth v. Sitler, 260 Pa. 550, 103 A. 925. However, it left the tax districts in need of funds. Furthermore, it must be remembered that the plaintiff, bound by the knowledge of its general agent, Jones (Russell v. Farmers' Mut. Fire Ins. Co., 272 Pa. 1, 115 A. 835; Hoffman v. Mutual Fire Ins. Co., 274 Pa. 292, 117 A. 917; Union Insurance Co. v. Wilkinson, 80 U.S. 222, 13 Wall. 222, 20 L.Ed. 617), issued the bonds involved with full knowledge of the previous loans made by the defendant and the method of repayment. It also knew, through its agent, of the proposed loan of $25,000 here involved, and not only made no objection, but actually, having this knowledge, thereafter approved bonds for subsequent years.

The defendant, on the other hand, merely advanced money which was used for the benefit of the tax districts. It acted openly and in good faith. The facts relative to the loan and repayment were in all probability known by the authorities of the tax districts and, as above stated, were known by the plaintiff.

In view of all of the evidence produced in this case, we agree with the statement made by the District Court when it said

**816**

that "a court of conscience should make but one answer" and that answer is that the "Surety Company has failed to show itself entitled to any rights which the Municipalities may have had."

The order of the District Court is therefore affirmed.