*230
 
 Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 On the first branch of the case the court said to the jury that, if the effects of the fall were temporary, and had entirely passed away before the application was taken, and if it did not affect Mrs. Wilkinson’s health or shorten her life, then the non-disclosure of the fall was no defence to the action. On the other hand, if the effects of the fall were not temporary, and remained when the application was taken, or if the fall affected the general health, or was so serious that it might affect the health or shorten life, then the non-disclosure would defeat recovery, although the failure to mention the fall was not intentional or fraudulent.
 

 It is insisted by counsel for the defendant that if the injury was considered serious
 
 at the time,
 
 it is one which must be mentioned in reply to the interrogatory, and that whether any further inquiry is expedient on the subject of its permanent influence on the health, is for the insurer to determine before making insurance. But there are grave and obvious difficulties in this construction. The accidents resulting in personal injuries, which at the moment are considered by the parties serious, are so very numerous that it would be almost impossible for a person engaged in active life to recall them at the age of forty or fifty years; and if the failure to mention all such injuries must invalidate the policy, very few would be sustained where thorough inquiry is made into the history of the party whose life is the subject of insurance. There is, besides, the question of what is to be considered a serious injury at the time. If the party gets over the injury completely ? without leaving any ill consequence, in a few days, it is clear that the serious aspect of the ease was not a true one. Is it necessary to state the injury and explain the mistake to meet the requirements of the policy?
 

 On the other hand, when the question arises, as in this case, on a trial, the jury, and not the insurer, must decide whether the injury was serious or not. In deciding this, are they to reject the evidence of the ultimate effect of the injury on the party’s health, longevity, strength, and other
 
 *231
 
 similar considerations? This would be to leave out of view the essential purpose of the inquiry, and the very matters which would throw most light on the nature of the injury, vvith reference to its influence on the insurable character of the life proposed.
 

 Looking, then, to the purpose for which the information is sought by the question, and to the difficulty of answering whether an injury was serious, in any other manner than by reference to its permanent or temporary influence on the health, strength, and longevity of the party, we are of opinion that the court did not err in the criterion by which it directed the jury to decide the interrogatory propounded to them.
 
 *
 

 Passing then to the second branch of the case. The defendant excepted to the introduction of the oral testimony regarding the action of the agent, and to the instructions of the court on that subject; and assigns the ruling of the court as error on the ground that it permitted the written contract to be contradicted and varied by parol testimony.
 

 The great value of the rule of evidence here invoked cannot be easily overestimated. As a means of protecting those who are honest, accurate, and prudent in making their contracts, against fraud and false swearing, against carelessness and inaccuracy, by furnishing evidence of what was intended by the parties, which can always be produced without fear of change or liability to misconstruction, the rule merits the eulogies it has received. But experience has shown that in reference to these very matters the rule is not perfect. The written instrument does not always represent the intention of both parties, and sometimes it fails to do so as to either; and where this has been the result of accident, or mistake, or fraud, the principle has been long recognized that under proper circumstances, and in an appropriate proceeding, the instrument may be set aside or reformed, as best suits the purposes of justice. A rule of evidence adopted by the
 
 *232
 
 ■ courts as a protection against fraud and false swearing, would, as was said in regard to the analogous rule known as the statute of frauds, become the instrument of the very fraud it was intended to prevent, if there did not exist some authority to correct the universality of its application. It is upon this principle that courts of equity proceed in giving the relief just indicated; and though the courts, in a common law action, may be more circumscribed in the freedom with which they inquire into the origin of written agreements, such an inquiry is not always forbidden by the mere fact that the party’s name has been signed to the writing offered in evidence against him.
 

 In the case before us a paper is offered in evidence against the plaintiff containing a representation concerning a matter material to the contract on which the suit is brought, and it is not denied that ho signed the instrument, and that the representation is untrue. But the parol testimony'makes it clear beyond a question, that this party did not intend to make that representation when ho signed the paper, and did not know he was doing so, and, in fact, had refused to make any statement on that subject. If the writing containing this representation bad been prepared and signed by the plaintiff in his application for a policy of insurance on the life of his wife, and if the representation complained of had been inserted by himself, or by some one who was his agent alone in the matter, and forwarded to the principal office of the defendant corporation, and acted upon as true, by the officers of the company, it is easy to see that justice would authorize them to hold him to the truth of the statement, and that as they had no part in the mistake which he made, or in the making of the instrument which did not truly represent what he intended, he should not, after the event, be permitted to show his own mistake or carelessness to the prej udice of the corporation.
 

 If, however, we suppose the party making the insurance to have been an individual, and to have been present when the application was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself
 
 *233
 
 wrote out all these representations, and was told by the plaintiff and his wife that they knew.nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement, would be an act of bad faith and of the grossest injustice and dishonesty. And the reason for this is that the representation was not the statement of the plaintiff, and that the defendant knew it was not when he made the contract; and that it was made by the defendant, who procured the plaintiff’s signature thereto.
 

 It is in precisely such cases as this that courts of law in modern times have introduced the doctrine of equitable estoppels, or, as it is sometimes called, estoppels
 
 in pais.
 
 The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could- be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim. It has been applied to the precise class of cases of the one before us in numerous well-considered judgments by the courts of this country.
 
 *
 
 Indeed, the doctrine is so well understood and so often enforced that, if in the transaction we are now considering, Ball, the insurance agent, who made out the application, had been in fact the underwriter of the policy, no one would doubt its applicability to the present case. Yet the proposition admits of as little doubt that if Ball was the agent of
 
 *234
 
 the insurance company, and not of the plaintiff, in what he did in filling up the application, the company must be held to stand just as he would if he were the principal.
 

 Although the very well-considered brief of counsel foi plaintiff in error takes no issue on this point, it is obvious that the soundness of the court’s instructions must be tested mainly by the answer to be given to the question,
 
 “
 
 Whose agent was Ball in filling up the application ?”
 

 This question has been decided differently by courts of the highest respectability in cases precisely analogous to the present. It is not to be denied that the application, logically considered, is the work of the assured, and if left to himself or to such assistance as he might select, the person so selected would be his agent, and he alone would be responsible. On the other hand, it is well known, so well that no court would be justified in shutting its eyes to it, that insurance companies organized under the laws of one State, and having in that State their principal business office, send these agents all over the land, with directions to solicit and procure applications for policies, furnishing them with printed arguments in favor of the value and necessity of life insurance, and of the special advantages of the corporation which the agent represents. They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hands to the assured. The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy, rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance as the full and complete representative of the company, in all that is said or done in making the contract. Has he not a fight to so regard him ? It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the argu
 
 *235
 
 ment being that, as to all other acts of the agent, he is the agent of the assured. This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon. But to apply such a doctrine, in its full force to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims. The tendency of the modern decisions in this country is steadily in the opposite direction. The powers of the agent are,
 
 'primd,
 
 fade, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.
 
 *
 
 An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his emplo3’ment, as if they proceeded from the principal.
 
 †
 

 In the fifth edition of American Leading Cases,
 
 ‡
 
 after a full consideration of the authorities, it is said;
 

 “ By the interested or officious zeal of the agents employed by the insurance companies in the wish to outbid each other and procure customers, they not unfrequently mislead the insured, by a false or erroneous statement, of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the pplicy. The better opinion seems to be that, when this course is pursued, the description of the risk should, though nominally pro
 
 *236
 
 ceeding from the insured, be regarded as the act of the insurers.”
 
 *
 

 The modern decisions fully sustain this proposition, and they seem to us founded in reason and justice, and meet our entire approval. This principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents ; not that it may be contradicted^by oral testimony, but that it may be shown by such testimony that it. cannot be lawfully used agaiust the party whose name is signed t0 l(:'
 

 Judgment affirmed.
 

 *
 

 Wilkinson
 
 v.
 
 Connecticut Mutual Life Insurance Co., 30 Iowa, 119.
 

 *
 

 Plumb
 
 v.
 
 Cattaraugus Ins. Co., 18 New York, 392; Rowley
 
 v.
 
 Empire Ins. Co., 36 Id. 550; Woodbury Savings Bank
 
 v.
 
 Charter Oak Ins. Co., 31 Connecticut, 526; Combs
 
 v.
 
 The Hannibal Savings and Ins. Co., 43 Missouri, 148.
 

 *
 

 Bebee
 
 v.
 
 Hartford Ins. Co., 25 Connecticut, 51; The Lycoming Ins. Co.
 
 v.
 
 Schollenberger, 8 Wright, 259; Beal
 
 v.
 
 The Park Ins. Co , 16 Wisconsin, 241; Davenport
 
 v.
 
 Peoria Ins. Co., 17 Iowa, 276.
 

 †
 

 Savings Bank
 
 v.
 
 Charter Oak Ins. Co., 31 Connecticut, 517; Horwitz
 
 v.
 
 Equitable Ins. Co., 40 Missouri, 557; Ayres
 
 v.
 
 Hartford Ins. Co., 17 Iowa, 176; The Howard Ins. Co.
 
 v.
 
 Bruner, 11 Harris, 50.
 

 ‡
 

 Published A.D. 1872, vol. 2, p. 917.
 

 *
 

 Rowley
 
 v.
 
 Empire Ins. Co., 36 New York, 550.