## INSURANCE COMPANY *v.* MAHONE.

1. The answer to a question put by an insurance company to an applicant for insurance, on a matter going to affect the risk, as written down by the agent of the company, when he takes the application for insurance, and which is signed by the applicant, may be proved by the evidence of persons who were present, not to have been the answer given by the applicant.  *Insurance Company* v. *Wilkinson* (13 Wallace, 222), affirmed.

2. The opinion of a medical witness that a person was not worthy of insurance, in June of one year, is not competent evidence in a suit on a policy issued on the 30th of August of the same year; there being no issue made in the pleadings as to the health of the assured prior to the date of the policy.

3. Under a stipulation that "all original papers filed in the case" (a suit against a life insurance company, on a policy of life insurance), and "which were competent evidence for either side," may be read in evidence, the written opinions of the medical examiner of the company, and of its agent appointed to examine risks, both made at the time of the application for insurance and appended to the proposals for insurance, and both certifying that the risk was a first-class risk, are competent evidence on an issue of fraudulent representation to the company, to show that the company was not deceived.

4. Evidence that the general agent of an insurance company, sent by it to examine into the circumstances, connected with the death of a person insured, after so examining, expressed the opinion that it would "be best for the company to accept the situation and pay the amount of the policy," is not competent on a suit by the holders of the policy against the company.

ERROR to the Circuit Court for the Southern District of Mississippi.

Mahone and wife brought debt on a policy of life insurance issued by the American Life Insurance Company, August 30th, 1870, for $5000, on the life of one Dillard. The policy was issued to him, but to be paid to Mrs. Malone, one of the plaintiffs, his sister, within sixty days after notice of his death, with *proviso*, that it should be void "if he shall become so far intemperate as to impair his health."

Dillard died November 4th, 1870, at a place called Edwards's Depot.

The general nature of the defence was that the policy had

been issued on the faith of false and fraudulent representations made by Dillard, whose life was insured, and that those representations were by the express agreement of the parties declared to be warranties.

Among the questions propounded to Dillard, and answered in the "proposals for insurance," was the following:

"Is the party temperate and regular in his habits?"

To which the answer "yes" was appended. This was question and answer No. 5.

Question No. 16 was:

"Is the applicant aware that any untrue or fraudulent answer to the above queries, or any suppression of facts in regard to health, habits, or circumstances, will vitiate the policy?"

To this the answer "yes" was also appended.

One issue was whether Dillard had falsely and fraudulently answered "yes" to the question No. 5.

None of the answers were written by Dillard, though he signed his name at the foot of them all. They were written by one Yeiser, the agent of the company, and, as he testified, read over to Dillard, who then signed them, and immediately afterwards signed a declaration filled up by the agent, which was, in effect, an agreement that if the said proposals, answers, and declarations returned to the company should be found fraudulent or untrue in any respect, or if there should be any wilful misrepresentation or concealment in the said declaration, the policy should be void. Evidence of all this was introduced by the defendants, and after its introduction the plaintiffs were permitted, against the objection of the defendants, to call a witness, one Cox, and to prove by him that he was present when Yeiser propounded question No. 5 to Dillard, and that Dillard's answer was not "yes," but that "I never refuse to take a drink," or "I always take my drinks," and that the answer "yes" was improperly written down without the knowledge or consent of Dillard. The reception of this testimony of Cox constituted the basis of the first assignment of error.

Another issue in the case was:

"Whether *after* the execution of the policy Dillard had become so far intemperate as to impair his health."

There was no issue as to his health prior to the insurance.

The second assignment complained of the exclusion of the testimony of Dr. Alexander, a medical witness.

This witness was offered to prove that, as the medical examiner of another insurance company, he had examined Dillard in June, 1870, and had given his opinion in writing to that company that Dillard was not worthy of insurance. This offer the court overruled.

The same witness was also asked whether he was acquainted with the condition and state of health of Dillard in June, 1870; and, if so, what it was, and the nature of his disease or malady, if any; and to this question, also, the court refused to permit an answer.

The third assignment was this: The plaintiffs were allowed in the cross-examination of one of the defendants' witnesses to ask whether a certain Dearing, the general travelling agent and supervisor of the defendants in the Southern States, did not, some time after the death of Dillard, visit Edwards's Depot (the place at which Dillard died) for the purpose of examining into the claim of the plaintiffs to have payment of the policy; and if so, whether he did make such examination, and whether he expressed an opinion as to whether or not the payment should be made? The witness under exception answered, "that Dearing did some time after Dillard's death visit Edwards's Depot for the purpose, as he stated, of examining into the liability of the insurance company upon the policy sued on; that the witness introduced Dearing to a number of the leading citizens of the place for the purpose of enabling him to ascertain the facts; that he remained some hours, and before going away expressed to the witness that in his opinion it would be best for the company to accept the situation and pay the amount of the policy."

The fourth and fifth assignments of error were these:
It had been stipulated by the parties that all the original

papers filed in the cause, and which were competent evidence for either side, should be read in evidence. Against the objection of the defendants below, the plaintiffs below were allowed to read in evidence the certificate of one Harris, medical examiner of the company, and also a written statement of Yeiser, agent of the company, both made at the time of Dillard's application for insurance, and both certifying to the insurance company that Dillard was a first-class risk. These two papers were appended to the proposals for insurance and declaration, and the proposals and declaration by name were made part of the first and third pleas. The court allowed them to be read, and the company excepted.

A sixth assignment of error was to the charge. It presented in that form the same question as did the first, to the evidence.

Verdict and judgment having been given for the plaintiffs, the insurance company brought the case here.

*Messrs. Isaac Hazlehurst and E. L. Stanton, for the plaintiffs in error; Messrs. J. M. Carlisle and J. D. McPherson, contra.*

Mr. Justice STRONG delivered the opinion of the court.

That there is no substantial reason for complaining of the ruling of the court in receiving the testimony of the witness Cox—the reception of which constitutes the basis of the first assignment of error—is, we think, fully shown by what was decided in *Insurance Company v. Wilkinson*,* and in the cases therein mentioned. The testimony was admitted, not to contradict the written warranty, but to show that it was not the warranty of Dillard, though signed by him. Prepared, as it was, by the company's agent, and the answer to No. 5 having been made, as the witness proved, by the agent, the proposals, both questions and answers, must be regarded as the act of the company, which they cannot be permitted to set up as a warranty by the assured. And this is especially so when, as in this case, true answers were in fact made by

---

the applicant (if the witness is to be believed), and the agent substituted for them others, now alleged to be untrue, thus misrepresenting the applicant as well as deceiving his own principals. Nor do we think it makes any difference that the answers as written by the agent were subsequently read to Dillard and signed by him. Having himself answered truly, and Yeiser having undertaken to prepare and forward the proposals, Dillard had a right to assume that the answers he did make were accepted as meaning, for the purpose of obtaining a policy, what Yeiser stated them in writing to be. The acts and declarations of Yeiser are to be considered the acts and declarations of the company whose agent he was, and Dillard was justified in so understanding them. The transaction, therefore, was substantially this: The company asked Dillard, "Are you temperate and regular in your habits?" to which he answered, "I never refuse to take a drink," or, "I always take my drinks." To this the company replied, in effect, "We understand your answer to mean the same, in your application for a policy, as if you had answered 'yes,' and we accept it as such, and write 'yes' in the proposals." Then, upon being asked whether he warranted the truth of his answers, he returned the reply, "Since you so understand my answers, I do." Surely, after such a transaction, the company cannot be permitted to say that the applicant is bound by what was written in the proposals for insurance as his warranty. And that such was the transaction the evidence received by the court tended to prove. The first assignment of error, therefore, cannot be sustained. Nor can the sixth, which is to the charge of the court, and which presents substantially the same question as that raised by the first.

The second assignment complains of the exclusion of certain testimony of Dr. Alexander. We cannot see why the testimony should have been received. The unfitness of Dillard for insurance in June, 1870, surely could not be proved by the fact that the witness had then expressed an opinion that he was unfit. And besides, such an opinion had no pertinency to any of the issues joined between the parties.

The witness was also asked whether he was acquainted with the condition and state of health of Dillard in June, 1870; and, if so, what it was, and the nature of his disease or malady, if any; and to this question, also, the court refused to permit an answer. The policy on which the suit was brought was made on the 30th day of August, 1870. Had the question addressed to the witness related to a time subsequent to the issuance of the policy, the answer to it should have been received, for one of the issues on trial was whether Dillard, " after the execution of the policy, became so far intemperate as to impair his health." But there was no issue in regard to his health prior to the insurance, and, therefore, the evidence offered was rightly rejected.

Of the fourth and fifth assignments, it is sufficient to say that we do not perceive they exhibit any error.

The third assignment is of more importance. The plaintiffs were allowed in the cross-examination of one of the defendants' witnesses to ask whether one Dearing, the general travelling agent and supervisor of the defendants in the Southern States, did not, some time after the death of Dillard, and after he had made an examination of the claim of the plaintiffs, express an opinion that it should be paid. To this question the witness replied that Dearing had expressed his opinion that it would be best for the defendants to accept the situation and pay the amount of the policy. That such an opinion allowed to go to the jury must have been very hurtful to the defendants' case is manifest, and that it was inadmissible is equally clear. The opinion of an agent, based upon past occurrences, is never to be received as an admission of his principals; and this is doubly true when the agent was not a party to those occurrences. We have so recently discussed this subject in *Packet Company* v. *Clough,** that it is needless to say more. For the error in receiving this evidence the judgment must be reversed.

Judgment reversed, and a

New trial ordered.

---

* 20 Wallace, 528.