FIDELITY & CASUALTY CO. OF NEW YORK v. PHŒNIX MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. March 22, 1900.)

No. 545.

1. INDEMNITY INSURANCE—CONSTRUCTION OF POLICY—SUBMISSION TO JURY.

Defendant issued a policy by which it agreed to indemnify plaintiff, a manufacturing concern, against losses from liability for damages on account of injuries to employés whose wages were included in its pay roll, the premium being based on the total amount of its pay roll for the year. Plaintiff was at the time engaged in foundry work, the building, repairing, and setting up of engines and other machinery, making store, office, and church furniture and fixtures, and erecting buildings, wholly or partly of wood, under contract, the latter in some cases including the tearing down of old buildings to be replaced. It was understood by the parties that the intention was to cover by the policy the employés engaged in all branches of its work. The application, which was filled up by defendant's general agent, described plaintiff's business as "manufacturers and erectors of machinery, show cases, and office fixtures, and general woodwork." Certain carpenters employed by plaintiff, whose wages were included in its general pay roll, were injured while engaged in tearing down an old building preparatory to the erection of a new one on its site. *Held*, in an action on the policy to recover for losses incurred by reason of such injury, that it was not error to submit to the jury the question whether such damages were within the scope of the policy, and whether the term "general woodwork," as commonly understood, or as agreed upon by the parties, covered the work in which the men were engaged when injured.

2. SAME—SUIT ON POLICY—EVIDENCE.

In such suit, evidence that an excess premium was paid on the policy some time after the injury on account of the pay roll, which included the wages of the employés injured, being larger than estimated when the advance premium was paid, was admissible as showing what was recognized by the parties as constituting the pay roll, by which the premiums and insurance were to be measured.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

The action in the court below was by the defendant in error against the plaintiff in error to recover upon a policy of accident insurance. The policy in question indemnified the defendant in error against losses from liability for damages on account of bodily injuries, fatal or otherwise, accidentally suffered by any employé or employés of the assured while on duty at the places and in the occupations mentioned in the application for this policy, and whose wages are included in the pay roll, as stated in paragraph 7 thereof. Paragraph 7 of the policy provided that: "The premium is based on the wages to be expended by the assured during the period of this policy. If the wages actually paid exceed the sum stated in the application, the assured shall pay the additional premium earned; if less than the sum stated, the company will return to the assured a pro rata part of the premium, less twenty-five per cent. for expenses." Paragraph 4 of the application referred to reads as follows: "Trade or business: Manufacturers and erectors of machinery, show cases, and office fixtures, and general woodwork." Paragraph 17 of the application related to the number of employés, and their occupation, the estimated wages included in the pay roll, and the places where employed; and contained the following answer: "Estimated average (number of men): Sixty to one hundred and seventy-five. Description of occupation: Machine hands, carpenters,

foundry men, laborers, fitters, varnishers, engineer, fireman, watchman, teamsters, etc. Estimated average annual wages: Thirty-five thousand dollars. Estimated expenditure for wages for the year: Thirty-five thousand dollars. Places at which workmen to whom wages paid are employed: Eau Claire, Wisconsin, and wherever insured have contracts." Evidence at the trial, wholly uncontradicted, tended to show that the business of the defendant in error at the time the policy was taken out and previously consisted of the doing of all kinds of work usually performed in foundries where brass and iron castings are made; the manufacture of sawmill work, steam engines, and the general repairing of machinery; the building of new machinery; the making of special machinery to order, outside of its general line of sawmill machinery and engines; the manufacture of store fixtures, office fixtures, show cases, church furniture; the construction of buildings of various kinds, made wholly or in part of wood; the tearing down of buildings preparatory to reconstruction; the laying of sidewalks, building of porches, etc. There was evidence, also, wholly uncontradicted, that at the time the application was entered into the defendant in error had under construction a mill building at Green Bay, in performance of a general contract to erect such building, and put into it the necessary mill machinery. The evidence submitted at the trial showed that the employés injured, and on account of whose injuries the suit was brought, were, in fact, at the time of their injury, employed by the defendant in error to tear down a building constructed of brick, stone, iron, and wood, preparatory to the erection of another; that at the time of the accident the employés injured were engaged in tearing out the woodwork itself, and part of the stone and iron construction; that this work of tearing down was in performance of a contract whereby the defendant in error had engaged to tear down the old structure, and replace in its stead a business building in Eau Claire, Wis., including all the excavation and mason work, plastering, carpenter work, roofing and glazing, and to furnish all other materials of every kind, labor, scaffolding, and cartage, for the full completion of said business house accorded to the drawings, plans, etc. The contract of indemnity was entered into on the part of defendant in error by C. B. Daniels, its general manager, and on the part of the plaintiff in error by J. H. Petterbridge, its local agent, and William Meyst, residing at Milwaukee, and state agent for the plaintiff in error. Meyst, among other things, testified that he traveled in the capacity of such state agent, to appoint agents, and also to write insurance; that he saw Daniels probably nine times during the year previous to the taking out of the policy; that his purpose was to induce Daniels to take employers' liability insurance, which the plaintiff in error was then carrying with a great many factories; that at the time the application was taken, or on previous occasions, Daniels had told him what the defendant in error's various kinds of business, were, including an occasional contract for the erection of buildings. On the trial of the case in the circuit court there was evidence tending to show that Daniels, at the time the policy was written, told Meyst and Petterbridge that their business included the reconstruction and overhauling of buildings, and the tearing down and rebuilding of buildings. This evidence was, to some extent, contradicted. The evidence submitted at the trial, taken as a whole, tended to show that the answers in the application relating to the occupation and pay roll of the employés were meant by Daniels to include the occupations in which the men injured were engaged; that the purpose was to insure against liability for accident to any and all of the defendant in error's employés; and that, in fact, the pay roll included the employés on account of whose injuries the suit was brought. The evidence also tended to show that on February 20, 1897, subsequent to the accident, which occurred August 17, 1896, the defendant in error paid to the plaintiff in error the sum of $42.91 on account of excess of the pay roll of the defendant in error during the preceding year over the estimated sum of $35,000; that this payment was in pursuance of clause 7 of the policy; and that the pay roll, as thus increased, included every employé of the defendant in error during the year 1896. On the trial of the case the court admitted evidence tending to show the general business of the defendant in error; also evidence tending to show that the phrase "general woodwork," employed in paragraph 4 of the application, had a well-defined meaning, including the woodwork for any building or structure from the ground

up, and including also the overhauling, repairing, and rebuilding that might be necessary where woodwork enters into the structure; evidence, also, tending to show that at the time the policy was written Meyst, the state agent of the plaintiff in error, was told by the general manager of the defendant in error that the business of defendant in error included the tearing down and rebuilding of structures; also evidence tending to show that when making out the application Daniels objected to the use of the words, "manufacturers and erectors of machinery, show cases, and office fixtures," in the paragraph relating to trade and business, and that thereupon Meyst said: "You folks do so many different things that I cannot write it all out there, and we will put in the words 'general woodwork.' That will cover everything that you want to do or are liable to do in that line. You are fully covered. That clause, 'general woodwork,' is ample for everything;" and other testimony tending to show that Meyst at the time stated that the addition of the words "general woodwork" would fully cover everything, including work on buildings composed of stone, brick, iron, etc., and the tearing down of the same; also testimony tending to show the receipt for the excess premium, as stated above,— to all of which testimony the plaintiff in error at the time excepted, and all of which are made the subject-matter of assignments of error in this court. The court below, in substance, instructed the jury that, if they found from the evidence that the parties did not enter into the contract of insurance upon the understanding that the words "general woodwork" extended to and covered work of repairing, reconstructing, and tearing down buildings, such as the defendant in error was engaged in at the time of the accident, the plaintiff in error was not liable; that the term "general woodwork" is a term of art capable of different meanings, and, if the parties at the time agreed upon a certain meaning, the court and jury would be bound thereby; that if Meyst told Daniels, as claimed by him, that the term "general woodwork" would cover the work in which the employés injured were afterwards engaged, the plaintiff in error would be bound thereby; that the burden of proof respecting such meaning to be imported into the term "general wordwork" was upon the defendant in error; and that the giving of the receipt for the excess premium was a question of fact, to be submitted to the jury. The verdict was for the defendant in error for the amount of $3,078.95.

G. M. Woodward, for plaintiff in error.

Charles Quarles and T. F. Frawley, for defendant in error.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts, delivered the opinion of the court.

It is clear to us that at the time the contract for indemnity was entered into the defendant in error was engaged in a general business that included the tearing down of buildings preparatory to the construction of new ones; that the scope of its business in this particular was well known in that community; that the purpose of defendant in error in taking out the insurance was to obtain indemnity against losses by accident in this as well as in other lines of its general business; that the pay roll, made the basis for the premium rate, was meant to include the employés thus engaged; and that the occupations described in the application were meant by the insured to include, and did include, the employés thus employed. This evidence was all submitted to the jury, and, though not specially commented upon in the instructions of the court, must have entered into the deliberations and finding of the jury. Upon this evidence, if, indeed, not upon the face of the policy itself, the jury, in our opinion, was clearly justified in finding that the men injured—carpenters—were, at the time of the injury, engaged in one of the occu-

pations covered by the policy of insurance. The trial in the circuit court seems to have gone off mainly upon the conception that clause 4 of the application, relating to the trade and business of the insured, controlled the scope of the insurance; and that, unless the occupations of the men injured were within a fair interpretation of such clause, the plaintiff in error would not be liable. This clause of the application does not, in our opinion, give substantial scope and effect to the insurance. At most it is only a clause of representation or warranty. If, in that attitude, it deceived, or was calculated to deceive, the insurance company, the policy might thereby be avoided; but the evidence submitted shows, and the jury, upon instructions certainly in favor of the insurance company, found, that the term "general woodwork" was commonly understood to include the character of work upon which the employés injured were, at the time, engaged, and that at the time the policy was taken out the state agent of the insurance company, writing up the application, not only so interpreted it, but himself suggested it as a term broad enough to cover every line of business in which the defendant in error was then engaged. Whatever, therefore, may be the technical meaning of clause 4, the court was well within the authority of Insurance Co. v. Mahone, 21 Wall. 152, 22 L. Ed. 593, and Insurance Co. v. Baker, 94 U. S. 610, 24 L. Ed. 268, in holding that it was not necessarily unambiguous, and in submitting its meaning, as commonly understood, and as agreed upon by the parties, to the jury, as one of the questions of fact in the case. We see no error, in this respect, either in the admission of the evidence objected to or in the instructions applied by the court. Indeed, looking upon this clause as one of representation only, and not as the clause of the application that gave scope to the insurance, the charge of the court appears to have been much more favorable to the plaintiff in error than, under our view of this case, it ought to have obtained. If the court below mistook clause 4,—a merely incidental issue,—as we view it, for the substantial issue in the case, the injury arising therefrom affected the insured, and not the insurer. If an error, it did not prejudice the case of the plaintiff in error.

Nor was there any error in admitting the receipt for the excess premium, and in submitting it as one of the facts to the jury. It was clearly pertinent to show to what extent the parties understood the pay roll, as covering the employés injured in the accident.

On the whole case, after a careful examination of all the evidence submitted, we are of the opinion that the defendant in error was entitled to recover upon the policy of insurance, that the verdict of the jury is clearly sustained, and that there was no error in the trial in the circuit court that in any degree prejudiced the cause of the plaintiff in error. The judgment will be affirmed.

JENKINS, Circuit Judge (concurring). The policy of insurance states that it was issued in consideration of the application, "which is hereby made a part of this contract." Effect should therefore be given to the application, not as a representation, but as a part of the

contract, limiting liability as therein expressed. It is clear from the evidence in the record that the agent of the insurance company filled the blank application, and at the time agreed with the insured, touching the meaning of the expressions therein employed, that they should cover all the business in which the insured was engaged. Within the authority of Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617, Insurance Co. v. Mahone, 21 Wall. 152, 22 L. Ed. 593, and Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, 33 L. Ed. 341, the contract would be construed in the light of such agreement, and would be held to cover all business of the insured. If, upon the face of the policy, that were doubtful, possibly, upon this evidence, and under these authorities, the court would have been justified in directing a verdict for the plaintiff below. At all events, the verdict was clearly in accord with the evidence, and could not well have been other than it was. The policy indemnified against loss from liability for damages through accidents to the servants of the insured while engaged in the occupations mentioned, "whose wages are included in the pay roll" upon which the premium was based. It was, therefore, proper for the plaintiff below to show payment to the insurer of the further premium which the contract required, based upon the pay roll. That such payment was made after the accident which is the subject of inquiry here, and was solicited by the agent of the insurer, and that the pay roll included the wages of the servants injured at the time of the accident, does not affect the materiality of the evidence, although it was not proof of a waiver by the insurance company, since knowledge of the fact that the pay roll included such wages was not brought home to it. If the evidence was improperly used by counsel to urge upon the jury the notion of the waiver, objection to such use should have been made timely, and preserved in the record, or the court should have been requested specifically to charge the jury that no such waiver was shown. The objection urged is, therefore, unavailing here; and, indeed, if the objection had been seasonably taken, and properly preserved, it is doubtful if we should not regard the failure of the court below to specifically instruct upon the objection as a harmless error, because the insurer was liable for loss upon the ground above considered.