## CARTER v. BUSINESS MEN'S ASSUR. CO. OF AMERICA.

### No. 263.

District Court, W. D. Kentucky, at Bowling Green.

June 1, 1937.

Laurence B. Finn, of Bowling Green, Ky., for plaintiff.

B. J. Bethurum, of Somerset, Ky., for defendant.

HAMILTON, District Judge.

Barlow Bryant, a resident of Monroe county, Ky., made application on December 19, 1934, to the defendant for a policy of insurance cn his life in the principal amount of $5,000. Pursuant to his application, the defendant issued its policy No. L–201200 on December 30, 1934. Bryant died February 3, 1936, and his administrator filed with the defendant proofs of loss and demand for payment, which was refused.

This action was instituted March 31, 1936, in the Circuit Court of Monroe county, Ky., and within the time provided under the law was removed to this court on the ground of diversity of citizenship.

The defendant answered, admitted the issuance of the policy, and alleged that in the application, which was made a part thereof, the insured made false and fraudulent answers to the following material questions:

"Q. 2. Have you consulted or been treated by any physician or surgeon within the past five years? A. No.

"Q. 3. Have you ever been under observation, care or treatment in any hospital, sanitarium, asylum or similar institution? A. No. * * *

"Q. 6. Have you ever been addicted to the use of any drug or liquor? A. No."

The defendant alleged that the insured had within the period stated in question No. 2 been treated by a regularly practicing physician for sickness and disease, and had also been confined in a sanitarium for treatment for the excessive use of intoxicating liquors and narcotic drugs, which was contrary to his answer to question No. 3; and further, that the insured had habitually and continuously used liquor and

narcotics excessively, contrary to his answer to question No. 6.

Defendant further alleged that the insured made the false statements in his application for the purpose of deceiving defendant and causing the issuance of the policy, all of which was a fraud.

The plaintiff, in his reply, admitted the questions and answers were as stated in the application, but alleged the insured had at the time given true and correct answers to the agents, who wrote untrue answers.

The defendant, in its rejoinder, denied its agents had written untrue answers, and further alleged the insured had signed the application after it was written and had accepted it as a part of the policy, and was estopped to deny its correctness.

The defendant demurs to the second paragraph of the reply, and the plaintiff to the second paragraph of the rejoinder; and the case is submitted on these demurrers.

In addition to the parts of the application specifically pleaded, the defendant relies on that part of the policy which provides:

"This policy and the application herefor constitute the entire contract of insurance between the parties hereto. All statements made by the insured shall in the absence of fraud be deemed representations and not warranties, and no such · statement shall void the policy unless it is contained in the application and a copy thereof attached to the policy when issued. * * *

"This policy is issued in consideration of an application for insurance, copy of which is attached hereto and made a part hereof."

And also on the following provisions of the application: "(30) Do you agree that no person except an executive officer of the Company shall have authority to make or modify any contract of insurance in behalf of the Company or to waive any of its requirements and that the falsity of any answer in this application shall bar the right to recover hereunder if such answer is made with intent to deceive or materially affects the acceptance of the risk by the Company, and do you expressly waive on behalf of yourself and of any person who shall have, or claim, any interest in any contract issued hereunder, all provisions of law forbidding any physician or other person who has attended or examined or who may hereafter attend or examine you from disclosing any knowledge or information which he has or may hereafter acquire? Yes."

Defendant also relies on section 679, Carroll's Kentucky Statutes, 1936 Edition, which is as follows: "All policies or certificates hereafter issued to persons within the Commonwealth of Kentucky by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the by-laws, or the rules of the corporation, either as forming part of the policy or contract between the parties thereto, or as having any bearing on said contract, shall have such application, by-laws and rules, or the parts thereof relied upon as forming part of the policy or contract between the parties thereto, or as having any bearing on said contract, attached to the policy or certificate, or printed on the face or reverse side thereof, and unless either so attached and accompanying the policy, or printed on the face or reverse side thereof, shall not be received as evidence in any action for the recovery of benefits provided by the policy or certificate, and shall not be considered a part of the policy, or of the contract between the parties. The policy or certificate, and the rules and regulations, shall be printed, and no portion thereof shall be in type smaller than brevier: Provided, however, That nothing in this section shall be construed as applying to evidence used in reinstatement of a policy or certificate. But the provisions of this section and this subdivision shall not apply to secret or fraternal societies, lodges, or councils, which are under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and pay no commission, nor employ any agents, except in the organization and supervision of the work of local subordinate lodges or councils."

Plaintiff insists that the knowledge of defendant's soliciting agent was imputed to it, and, since the agent knew of the insured's answers, which were not a misstatement, and thereafter the defendant issued its policy, it is deemed to have waived the provisions of the application relied upon and it is now estopped from pleading as a defense the alleged material misstatements of facts.

Defendant insists that the insured accepted its policy with the knowledge that

material facts were misstated, and he knew this when he signed the application. He is now estopped to claim imputed knowledge of its agent to the defendant, or to claim that the defendant has waived any defensive provision of the policy or the application.

Estoppel, while recognized as an essential part of the law, is not its favorite. Its application always locks the door to truth and is a barrier against an investigation of the facts. It lives in the law to prevent an undue advantage being obtained by one party at the expense of another which could not otherwise be rectified.

Section 656(e), Carroll's Kentucky Statutes, 1936 Edition, makes it a crime for the agent or officer of a life insurance company doing business in the commonwealth to falsify or cause to be falsified, or insert or cause to be inserted, in any application for life insurance, any answer to a question propounded in such application of an applicant for insurance, or insert or cause to be inserted in any such application any statement or answer other than the statement or answer made by the applicant. It is not to be lightly presumed that any agent of an insurance company would commit a crime in connection with his business.

Section 633 of Carroll's Kentucky Statutes, 1936 Edition, provides, among other things, whoever solicits and receives applications for insurance on behalf of any insurance company shall be held to be an agent of such company, anything in the policy or application to the contrary notwithstanding. The Court of Appeals of Kentucky has consistently construed this section of the statute to apply to applications for policies, and, where the agent fills in the application, he represents the company and not the insured. Standard Auto Insurance Association v. Henson, 201 Ky. 230, 256 S.W. 414; Svea Fire & Life Insurance Company v. Walker, 235 Ky. 289, 30 S.W.(2d) 1105. See, also, Kentucky Macaroni Company v. London & Provincial Marine & General Insurance Company (C.C.A.) 83 F.(2d) 126.

The reply of the plaintiff in the case at bar alleges that the insured made correct answers to each and every one of the questions asked, and the agent of the company, without his knowledge or consent, inserted false answers.

We are here dealing with a contract which was executed in Kentucky, and the decisions of its Court of Appeals, while not controlling, should be followed unless in conflict with the federal courts.

In the case of Metropolitan Life Insurance Company v. Trunick's Administrator, 246 Ky. 240, 247, 54 S.W.(2d) 917, 918, the insurance company resisted payment of a policy on the ground that the insured in her lifetime had made false answers in the application for insurance in regard to her condition of health, hospitalization, and medical care. It developed the insured had cancer, had been in hospitals, and been treated by physicians. It was insisted that the agent of the insurer knew the true facts, but fraudulently concealed them from the insurer. The policies expressly provided they should be void "if * * * the insured * * * has within two years before date hereof been attended by a physician for any serious disease or complaint."

The evidence heard at the trial conclusively showed that some, if not all, of the statements relied on were both false and material. The court, in holding the insured's agent had waived the forfeiture provisions of the policy for fraudulent misrepresentation, said:

"The sole question presented for determination is whether or not any facts were shown which relieved the plaintiff from the binding effect of Celesta Trunick's signature to the applications which contained the misrepresentations.

"Ordinarily, a person who signs a writing is bound by its terms and conditions, though it is not read to or by him, unless his signature to the writing is obtained by fraudulent means employed by the other party. In the case of insurance contracts, it is the rule that the insurer will be estopped to deny its liability on the policy if its agent inserts false statements in the written application, or by misleading statements induces the insured to make false answers if the insured is acting in good faith. Provident Life & Accident Insurance Company v. Parks, 238 Ky. 518, 38 S.W.(2d) 446, 448; Standard Auto Insurance Association v. Russell, 199 Ky. 470, 251 S.W. 628; Aetna Life Insurance Company v. McCullagh, 185 Ky. 664, 215 S.W. 821; Hartford Insurance Company v. Haas, 87 Ky. 531, 9 S.W. 720, 10 Ky.Law Rep. 573, 2 L.R.A. 64."

The above case states substantially the Kentucky rule, and has been applied in all cases in Kentucky, except where the evidence showed the insured had knowingly participated in the fraud of the agent of the insurer in procuring the insurance. The doctrines of estoppel and waiver have been interchangeably applied to insurance contracts, based on the provisions of the Kentucky Statutes making the agent of the insurer solely the representative of the company and with implied general authority to act for the company.

The doctrine of estoppel in some cases has been rested on a broader ground than the statute. It is said that the insured, if not misled by the agent, would in all probability pay a higher premium to cover the risk, and, if his application was denied on a true statement of the facts, would apply to another insurer, and a manifest injustice is done the policyholder by the insurance company accepting premiums and not questioning its liability on the policy until after death, too late for the insured to protect those dependent on him.

As was said by Judge Holt in the case of Harrison v. Provident Relief Association, 141 Va. 659, 126 S.E. 696, 701, 40 A.L.R. 616: "Men should not be compelled to will law suits to the objects of their bounty, and a charge of fraud can best be answered by one who is alive to testify."

Coming to the decisions of the federal courts, we find there is some apparent contrariety. It may be said the question is troublesome and requires considerable legal refinement to reconcile apparently conflicting theories, but when closely analyzed there is no conflict. The question was first considered by the Supreme Court in the case of Union Mut. L. Insurance Company v. Wilkinson, 13 Wall. 222, 224, 20 L.Ed. 617.

In that case, the Union Mutual Insurance Company of Maine insured the life of Mrs. Malinda Wilkinson, her husband being the beneficiary. The company did business in Keokuk, Iowa (where the application was made and policy delivered) through its agent Ball. He propounded questions and took down the answers, and, when the application was signed by the applicant, it was forwarded by the physician to the company. The policy was returned to the agent, who delivered it and collected the premiums. Among the questions and answers were:

" 'Has the party ever had any serious illness, local disease, or personal injury; if so, of what nature, and at what age?' * * *

" 'No.' * * *

" 'Mother's age, at her death? * * *

" '40. * *. *

" 'Cause of her death? * * *

" 'Fever.' "

On the death of Mrs. Wilkinson, the company refused to pay on the policy on the ground that the answers to above questions were false; that Mrs. Wilkinson had received a serious personal injury in 1862; and that her mother had died at 23 of consumption, rather than at 40 of fever.

The husband brought suit to recover and the lower court found for the plaintiff. The Supreme Court upheld the decision of the Circuit Court, and said:

"In the case before us a paper is offered in evidence against the plaintiff containing a representation concerning a matter material to the contract on which the suit is brought, and it is not denied that he signed the instrument, and that the representation is untrue. But the parol testimony makes it clear beyond a question, that this party did not intend to make that representation when he signed the paper, and did not know he was doing so, and, in fact, had refused to make any statement on that subject. If the writing containing this representation had been prepared and signed by the plaintiff in his application for a policy of insurance on the life of his wife, and if the representation complained of had been inserted by himself, or by some one who was his agent alone in the matter, and forwarded to the principal office of the defendant corporation, and acted upon as true, by the officers of the company, it is easy to see that justice would authorize them to hold him to the truth of the statement, and that as they had no part in the mistake which he made, or in the making of the instrument which did not truly represent what he intended, he should not, after the event, be permitted to show his own mistake or carelessness to the prejudice of the corporation.

"If, however, we suppose the party making the insurance to have been an individual, and to have been present when the application was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself wrote out all these representations, and was told by the

plaintiff and his wife that they knew nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement, would be an act of bad faith and of the grossest injustice and dishonesty. And the reason for this is that the representation was not the statement of the plaintiff, and that the defendant knew it was not when he made the contract; and that it was made by the defendant, who procured the plaintiff's signature thereto. * * *

"This question has been decided differently by courts of the highest respectability in cases precisely analogous to the present. It is not to be denied that the application, logically considered, is the work of the assured, and if left to himself or to such assistance as he might select, the person so selected would be his agent, and he alone would be responsible. On the other hand, it is well known, so well that no court would be justified in shutting its eyes to it, that insurance companies organized under the laws of one State, and having in that State their principal business office, send these agents all over the land, with directions to solicit and procure applications for policies, furnishing them with printed arguments in favor of the value and necessity of life insurance, and of the special advantages of the corporation which the agent represents. They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hands to the assured. The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy, rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance as the full and complete representative of the company, in all that is said or done in making the contract. Has he not a right to so regard him? It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the argument being that, as to all other acts of

the agent, he is the agent of the assured. This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies, waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon. But to apply such a doctrine, in its full force to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims. * * *

"An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal."

The principle of this case has been reaffirmed in the cases of American Life Insurance Company v. Mahone, 21 Wall. 152, 157, 22 L.Ed. 593; New Jersey Mutual Life Insurance Company v. Baker, 94 U.S. 610, 614, 24 L.Ed. 268; Eames v. Home Insurance Company, 94 U.S. 621, 630, 24 L.Ed. 298; Continental Insurance Company v. Chamberlain, 132 U.S. 304, 312, 10 S.Ct. 87, 33 L.Ed. 341.

Now turning to cases apparently contrary, the first is New York Life Insurance Company v. Fletcher, 117 U.S. 519, 554, 6 S.Ct. 837, 843, 29 L.Ed. 934. In this case the New York Life Insurance Company issued at its home office in New York a policy on the life of C. S. Alford of Missouri, in 1877, on his application to an agent for such policy and a physical examination. He made certain statements and representations respecting his life, past and present health, to which he appended a declaration, warranting their truthfulness and agreeing they should be the basis of any contract between him and the company, and that if they, or any of them, were in any respect untrue, the policy issued thereon should be void and all money paid on account of the insurance should be forfeited; and further agreeing that, inasmuch as only the officers at the home office had authority to determine whether or not a policy should issue on any application, and as they acted only on the written statements and representations referred to, no statements or representations made, or information given, to

the person soliciting or taking the application for the policy, should be binding on the company or in any manner affect its rights, unless reduced to writing and presented at the home office in the application.

The policy was issued on the application and recited it was issued in consideration and upon the faith of the statements and representations contained in the application, all of which had been warranted by the applicant to be true. The insured died in 1880, and payment of the insurance was refused because among the documents furnished with proof of death was an affidavit from his physician of ten years that he had attended him once for diabetes and that he died of that disease, and that the application for this reason contained false statements and representations because he stated therein he had no kidney trouble or serious disease, and no regular medical attendant.

The executor stated in his reply to the answer denying liability that two agents of the company were personally acquainted with the assured and knew his physical condition and that he had been treated for diabetes, and solicited him for insurance, and that he told them he didn't think he was insurable, and that they assured him he was, that the fact he had had diabetes made no difference and if he would take out a policy and pay the required premiums he would have no trouble, and he consented. He said they advised him the application was a mere formality; that one of them read the questions to him and the other wrote the answers; and that when he was asked about having any disease, he told them they knew his condition and that he was under Dr. Brokaw's treatment for diabetes and that they could talk to the doctor if they chose. He also said the assured signed the application for the purpose of identification without reading it, and that, when the policy was delivered to him, he neither read it nor the application.

On the trial it was proved Dr. Brokaw had been his physician and treated him for some years before his death for diabetes. It was also proved, on the day he made application to the New York Life Insurance Company for insurance, he also applied to the Penn Mutual and set out in the application he had diabetes and Dr. Brokaw was his physician, and that company refused a life policy, but issued a fifteen year endowment. A witness testified to hearing the conversation between the assured and the agents about the diseased kidneys and that he did not think the application was read to the assured.

This case is different from the Wilkinson Case because here there was a limitation upon the power of the agent, which limitation was brought to the attention of the assured. There was no such limitation in the Wilkinson Case. Also in this case the policy was returned to the assured with the application, calling his attention thereto, inviting him to inspect it and disclose if any errors were made therein. This was not done in the Wilkinson Case.

The lower court gave the assured the full amount of the policy, and the Supreme Court, in reversing, said:

"Where such agents, not limited in their authority, undertake to prepare applications, and take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company. Nothing in these views has any bearing upon the present case. Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which, as we have stated, he must be presumed to have read. He is therefore bound by its statements. * * *

"There is another view of this case, equally fatal to a recovery. Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application, annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated, not only upon himself, but upon the company, and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents, and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements. The consequences of that approval cannot, after his death, be avoided."

In Northern Assurance Company v. Grand View Building Association, 183 U. S. 308, 365, 22 S.Ct. 133, 46 L.Ed. 213, the insured had other insurance on the property. This fact was known to the insur-

er's agent, but was not disclosed in the application. Justice Shires, speaking for the Supreme Court, reviewed at great length both American and English cases and prior decisions of the court on the question as to whether parol testimony could be introduced to contradict the terms of the policy and the application on which issued. The length of the opinion forbids but casual reference here, but suffice it to say, the ruling of the court in the Wilkinson Case was approved, and its application distinguished from the case then under consideration.

In the case of Aetna Life Insurance Company v. Moore, 231 U.S. 543, 34 S. Ct. 186, 58 L.Ed. 356, and Prudential Life Insurance Company v. Moore, 231 U.S. 560, 568, 34 S.Ct. 191, 192, 58 L.Ed. 367, the court considered two cases involving the same assured and the same question. It was conceded that the policies were Georgia contracts. It was provided by the Code of that state (Civ.Code 1910, § 2479): "Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy."

The policies in question also provided that: "No agent or other person not an executive officer can alter or waive any of the conditions of this policy or make any agreement binding upon said company."

There was no Georgia statute the equivalent of the Kentucky statute making the solicitor the general agent of the company for all purposes and prohibiting contracting to the contrary.

In the cases here under discussion, as in the one at bar, it was claimed the insured fully disclosed to the examining physician he was afflicted with heart disease, but the physician, contrary to the wishes of the insured, did not disclose this fact in the answers. The beneficiary of the insured insisted the company was bound by the acts of its agent and had waived the defensive provisions of the policy. The Supreme Court, 231 U.S. 543, at page 558, 34 S.Ct. 186, 191, 58 L.Ed. 356, in denying this contention, said:

"It is hence contended that the agent, not Salgue, is responsible for the positive character of the answers, and that the insurance company is estopped by this action of the agent. and by his knowledge of the actual conditions and circumstances. It is therefore further contended that the case comes within the principle of the cases which establish that where the agent of the company prepares the application or makes representations to the insured as to the character and effect of the statements of the application, he will be regarded in so doing as the agent of the company, and not the agent of the insured. Among the cases cited to sustain the principle are the following in this court: Union Mutual Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L.Ed. 617; American Life Insurance Co. v. Mahone, 21 Wall. 152, 22 L.Ed. 593; New Jersey Mutual Life Insurance Co. v. Baker, 94 U.S. 610, 24 L.Ed. 268; Continental Life Insurance Co. v. Chamberlain, 132 U.S. 304, 10 S.Ct. 87, 33 L.Ed. 341; German-American Life Association v. Farley [102 Ga. 720, 29 S.E. 615], supra, is also cited, and, being a Georgia case, its authority is especially urged.

"There are, however, later cases which enforce the provisions of a policy, and we have seen that it was agreed in the policy under review 'that no statement or declaration made to any agent, examiner, or other person, and not contained in' the application, should 'be taken or construed as having been made to or brought to the notice or knowledge of' the company, 'or as charging it with any liability by reason thereof.' And he, Salgue, expressed his understanding to be that the company or one or more of its executive officers, and no other person, could grant insurance or make any agreement binding upon the company.

"The competency of applicants for insurance to make such agreements, and that they are binding when made, is decided by Northern Assurance Co. v. Grand View Building Association, 183 U.S. 308, 22 S. Ct. 133, 46 L.Ed. 213; Northern Assurance Co. v. Grand View Building Association, 203 U.S. 106, 27 S.Ct. 27, 51 L.Ed. 109; Penman v. St. Paul Fire & Marine Insurance Co., 216 U.S. 311, 30 S.Ct. 312, 54 L.Ed. 493."

In the case of Mutual Life Insurance Company of New York v. Hilton-Green, 241 U.S. 613, 624, 36 S.Ct. 676, 680, 60 L.Ed. 1202, the insured made materially false statements in his application, but it was claimed the agents of the insurer knew the true facts and that their knowledge would be imputed to their principal, there-

by waiving the forfeiture provisions of the policies. It was provided in the application that all statements made therein were warranties. The policies were written and delivered in the state of Florida, which state had a statute (section 2765, Gen. Statutes of Florida 1906) prescribing that every person who receives money for any insurance company in payment of a contract of insurance, or who directly or indirectly causes to be made any contract of insurance, shall be deemed to all intents and purposes to be an agent or representative of such company. The Supreme Court held that the medical examiners, who it was claimed wrote false answers into the applications, were agents of the insurer with limited authority and the statute did not make them general ones. The court rejected the contention of the representatives of the assured that the insurer had either waived or was estopped to set up the false and fraudulent representations in the application for the policy as a bar to recovery, and said:

"Considered in most favorable light possible, the above quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud. Moulor v. American Life Ins. Co., 111 U. S. 335, 345, 4 S.Ct. 466, 28 L.Ed. 447, 450; Phœnix Life Ins. Co. v. Raddin, 120 U.S. 183, 189, 7 S.Ct. 500, 30 L.Ed. 644, 646; Aetna Life Ins. Co. v. Moore, 231 U.S. 543, 556, 557, 34 S.Ct. 186, 58 L.Ed. 356, 365, 366. May, Ins. 4th ed. § 181.

"The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption,—when he is acquainted with the circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing. The Distilled Spirits, 11 Wall. 356, 367, 20 L.Ed. 167, 171; American Surety Co. v. Pauly, 170 U.S. 133, 156, 18 S.Ct. 552, 42 L.Ed. 977, 985; American Nat. Bank v. Miller, 229 U.S. 517, 521, 522, 33 S.Ct. 883, 57 L.Ed. 1310, 1312, 1313; Mechem, Agency, 2d Ed. § 1815.

"Section 2765 of the Florida statutes, supra, undertakes to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons, and certainly does not raise special agents, with limited authority, into general ones, possessing unlimited power. We assume Hogue, Torrey, and the medical examiners were in fact designated agents of the company, with power to bind it within their apparent authority; and in such circumstances the statute does not affect their true relationship to the parties. See Continental Ins. Co. v. Chamberlain, 132 U.S. 304, 310, 10 S.Ct. 87, 33 L.Ed. 341, 343; New York Life Ins. Co. v. Russell, 23 C.C.A. 43, 40 U.S.App. 530, 77 F. 94, 103; Wood v. Firemen's Insurance Co., 126 Mass. 316, 319; John R. Davis Lumber Co. v. Hartford Fire Ins. Co., 95 Wis. 226, 234, 235, 70 N.W. 84, 37 L.R.A. 131.

"The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. New York Life Ins. Co. v. Fletcher, 117 U.S. 519, 529, 533, 534, 6 S.Ct. 837, 29 L.Ed. 934, 939, 940; Northern Assurance Co. v. Building Association, 183 U.S. 308, 361, 22 S.Ct. 133, 46 L.Ed. 213, 234; United States Life Ins. Co. v. Smith, 34 C.C.A. 506, 92 F. 503."

It would extend this opinion to too great length to review even briefly the decisions of other federal and state courts on the legal question we have here. They are numerous

and apparently conflicting, but, when closely analyzed, with the two prime factors in view, the conflicts disappear. These factors are: First, the statutory provisions of the state where the contract is made; second, whether the provisions of the application are warranties or representations.

The policy involved in this action is a Kentucky contract and, as we have heretofore pointed out, the statutory law of the state makes the solicitor the general agent of the company, and contracting to the contrary is prohibited, so the case falls within the rule laid down by the Supreme Court in Continental Insurance Company v. Chamberlain, supra.

Section 639 of Carroll's Kentucky Statutes, 1936 Edition, provides: "All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy."

It will thus be seen that warranties are prohibited, and it follows that the case of Union Mut. Insurance Company v. Wilkinson, supra, is controlling.

The demurrer to the second paragraph of the plaintiff's reply should be overruled, and the demurrer to the defendant's rejoinder, as amended, sustained. The order entered in this action on May 19, 1937, is set aside and held for naught.